KING v. SEARS et al.    SEARS et al. v. KING.

1. Where, for the purpose of authenticating a tax sale in a way to render the prescribed affidavit a substitute for other evidence, the statute required the mayor to make oath that all the notices and advertisements required by the act have been duly and regularly given, an affidavit silent as to advertisements but deposing that all the notices required by the act have been so given, is insufficient.

2. The description in a conveyance being in these terms: "a certain lot or parcel of land lying and being within the incorporate limits of said city of Brunswick, and situate in that part known as Old Town; for a more particular description of said lot or parcel of land reference is hereby made to the plan of said city, executed by George R. Baldwin, civil engineer, by him signed and dated May 25th, 1837," the plan referred to not being produced nor its contents proved, the description is too vague and uncertain to be applied definitely to any premises whatever, and no recovery could be had upon the deed, were it otherwise sufficient to pass title. Nor would the production of the plan aid the defective description in the deed, unless the plan shows only one lot or parcel in Old Town. If it shows more than one, the uncertainty as to which particular one was sold would remain and be fatal.

3. A deed more than thirty years old and coming from the proper custody, purporting to have been executed in another State, attested by one witness, certified by him as a commissioner of deeds for this State in that State under his seal of office as duly acknowledged before him by the maker, and recorded in this State more than thirty years ago, the land conveyed by it being situated in this State, and possession of the land by the grantee in the deed for several years being shown, is admissible in evidence without further proof of its execution. The want of two witnesses does not render the deed invalid or inoperative as a conveyance of the premises described in it.

4. A description in a deed in these terms: "all those six certain lots, pieces or parcels of land, situate, lying and being in the town of Brunswick, county of Glynn, and State of Georgia, heretofore and up to the making of this indenture owned by the parties of the first part, and known and distinguished on a certain map of the said town of Brunswick, made according to the survey of the said town and recorded with the proper officer in the said county of Glynn, being the map mentioned and referred to in the several conveyances heretofore made and duly recorded, of the property hereby conveyed, as water lot number twenty-seven and town lots numbers twenty-four, twenty-five, one hundred and fifty-four,

v 91-37

three hundred and twenty-nine, three hundred and thirty," is sufficiently certain to show that the parcel designated as town lot No. 24 was meant to be conveyed. And the aid of extrinsic evidence may be invoked to identify that lot and establish its precise location.

5. A stranger to a deed cannot urge as an objection to its validity that it was executed for the sole purpose of enabling the grantee to maintain an action of ejectment in the Federal court to recover the premises from an adverse holder, the deed being made since the adoption of the code, which abrogates the old law prohibiting the conveyance of land pending an adverse possession. When a deed is offered in evidence, if the objection to its admission concedes that it was in fact executed and delivered, the objection should be overruled unless the matter of the objection would, if established, render the deed inoperative for the purpose sought to be subserved by its introduction.

6. Under the evidence the jury could have found a title by prescription, but the charge of the court did not constrain them to pass on that question.

7. The plaintiff claiming under a conveyance from a prior occupant who went in under color of title and remained for less than seven years, whether a recovery could be had upon such prior possession alone and the deed to the plaintiff, against one who entered under claim of right but who shows neither title nor lawful right, depends upon whether the plaintiff's grantor, on going out of actual possession, or afterwards, intended to abandon the premises, or whether he left with the intention to return and remained in that mind until he conveyed to the plaintiff.

8. So long as the superior court is not finally adjourned for the term, the term continues, though other courts of the circuit be held in the meantime. A motion for a new trial may be filed in the recess as well as in open court. When so filed it may be acted upon by the judge at any time during the term.

9. Where the judge certifies that the brief of evidence has been filed within the time prescribed by law, this will be taken as true although there may be no signed entry of filing on the brief itself. The act of November 12th, 1889, does not, in cases where the term continues longer than thirty days, require that the brief shall be approved within thirty days after the trial, but only that it shall be filed within that time subject to approval.

April 17, 1893. Argued at the last term.

Before Judge SWEAT. Glynn superior court. May term, 1892.

Ejectment was brought by Oceanna Sears against James F. King. The plaintiff obtained a verdict for the

premises in dispute, and the defendant excepted to the
overruling of his motion for a new trial.   The plaintiff
by cross-bill excepted to the overruling of her motion to
dismiss the motion for a new trial.   The grounds for
new trial were, that the court erred in overruling de-
fendant's objections to the deeds offered in evidence by
the plaintiff (as to which deeds and objections the de-
cision states all the material facts), and in charging the
jury, after reading to them from the act of 1837 referred
to in the first division of the opinion, as follows :   " If
you shall find in this case that a deed has been made to
the premises in dispute, which is the foundation of the
plaintiff's claim, under a tax sale made under the au-
thority of this law which the court has just read you,
and that upon such deed you shall find the evidences
required by this law, to wit the oath or affidavit of the
mayor executing the conveyance that the notices re-
quired by law had been duly and regularly given, then
the court charges you that that would be conclusive
evidence of the proper compliance with this law, in the
sale of the premises in dispute for taxes.   The court
charges you that you would be authorized, in examining
that affidavit of the mayor, if you shall find such affi-
davit upon this deed, to construe the term " notices," as
used in that affidavit, as including the notices required
by the act to be given of the advertisement of the sale
of the property in question.   The court charges you
that a sale regularly and duly made under this law, and
title executed under such sale, with an oath thereon
showing such statements as go to show that the
terms of the act have been complied with, would operate
to divest the title to this property from the then owner
of it, whoever that might have been, and to vest it in
the purchaser of this property at such sale and to whom
the conveyance in question was made by the mayor of
the city of Brunswick."

The verdict was rendered on May 10, 1892, at the May term of the superior court of Glynn county. On June 9, 1892, defendant filed his motion for new trial, together with a brief of the testimony. On June 10, 1892, and while the judge was in Ware county, a rule *nisi* was granted and order taken that the grounds of the motion be examined, considered, revised and approved on the hearing to be had on July 5, 1892, at Brunswick. On the same day an order was granted, that defendant have until July 5th to prepare and file, under the approval of the court, a brief of the evidence. On July 6, 1892, an order was passed, reciting that Glynn superior court at the term at which the case was tried, to wit " this present term," was in session for more than thirty days, and ordering that the plaintiff show cause *instanter*, or as soon as counsel could be heard, why the judgment and verdict should not be set aside and a new trial granted, etc. This order was passed in open court. The order overruling the motion for new trial was headed, "In Glynn superior court. May term, 1892, held July 7, 1892." The motion to dismiss was upon the following grounds : (1) It appeared from the record that the verdict was rendered on May 10, 1892, and it appeared from the minutes that on May 28, 1892, the court took a recess until July 5, 1892, and no order of the court was taken granting time in which to prepare and file a motion for new trial ; and during the *interim* from May 28th to July 5th, there had been two superior courts in session in the Brunswick judicial circuit presided over by the judge thereof, to wit an adjourned term of Appling superior court and an adjourned term of Ware superior court ; and the minutes of Glynn superior court showed that a special term of that court was held on June 13, 1892, as called by the judge for the purpose of granting charters ; and therefore the motion to dismiss was made upon the ground that the movant failed to

file the motion for new trial during the term at which the verdict was rendered, and within thirty days after the rendition of the verdict and during term time, to wit while the court was regularly in session. (2) No rule *nisi* authorized by law was granted in the case, in that, while there was what purported to be a rule *nisi* attached to the motion for new trial, the same was signed by the judge in Ware county and during the recess of Glynn superior court, the judge having no jurisdiction of the case at said time and place to grant the rule *nisi*. (3) No legal authority was vested in the judge to grant a rule *nisi* or do any other act connected with the motion, save at term time. (4) Under the law a brief of the evidence must be filed as a part of the record for revision and approval by the court; that is, it must be approved before it can become a brief of the evidence and part of the record; and no brief of the evidence was filed under the approval of the court, what purported to be such brief having been filed on June 9, 1892, and the judge's order in reference thereto, giving time, having been granted in Ware county during the recess of Glynn superior court, and no legal brief of evidence being ever in fact filed before July 5, 1892. The judge certified : " In Glynn superior court, May term, 1892. I do hereby certify that on the 28th day of May, 1892, all the jurors were discharged from further attendance upon court, and on said day court took a recess until the 5th day of July, 1892. I further certify that during the *interim* from the 28th day of May, 1892, I held two adjourned terms of superior court in the Brunswick judicial circuit, to say, Appling superior court convening on June 20th, 1892, and adjourning on June 24th, 1892, and Ware superior court convening on June 27th, 1892, and adjourning on June 30th, 1892, said terms being regularly adjourned terms of said court; and that I also granted two charters on June 13th, 1892,

it being recited in orders passed thereon that the same were granted at a special term of Glynn superior court for the granting of charters, notwithstanding the fact that the regular May term, 1892, of Glynn superior court had not been adjourned but recessed as aforesaid. I further certify that the rule *nisi* bearing date June 10th, and the order granting time bearing date June 10th, 1892, were signed by me while at Waycross, Ware county, Georgia, and during the recess of the court as aforesaid."

IRA E. SMITH and COURTLAND SYMMES, by J. H. LUMP-KIN, for King.

FRANK H. HARRIS, *contra*.

BLECKLEY, Chief Justice.

The premises sued for are described in the declaration thus: "a certain tract or parcel of land, situate, lying and being in the city of Brunswick, said county and State, and known or designated on the map or plan of said city, made by George R. Baldwin in the year 1837, as old town lot number twenty-four (24), and which is in the shape of a rectangle, measuring ninety by one hundred and eighty feet, and bounded on the west by Bay street, east by Oglethorpe street, south by lot number twenty-five, and north by lot number twenty-three." A demise was laid from Sylvester Mumford, and another from Oceanna Sears. Three deeds were introduced by the plaintiff; the first from Dart, as mayor of the city of Brunswick, to Abiel H. Merriam, dated at the top December 31st, 1841, and at the bottom January 31st, 1842, and purporting to be based on a sale for city taxes for the year 1841, the sale being made on the 31st of December in that year. The second was a deed from Henry Merrill and Harriet Merrill to Sylvester Mumford, dated October 27th, 1852. The third was a deed from Sylvester Mumford to Oceanna Sears, dated September 14th, 1888. There was evidence that Merriam

died intestate leaving Harriet, his widow, his sole heir, and that she afterwards intermarried with Henry Merrill. There was also evidence tending to show title in Mumford under the statute of limitations, such title as would be called prescription had it arisen since the adoption of the code. And the evidence showed with absolute certainty that Mumford had actual possession, if not for a term long enough to ripen a title under the statute of limitations, long enough to enable him or his vendee to recover against a wrong-doer on his prior possession alone if that possession had not been abandoned. Looking to the merits of the whole case, we are of opinion that there could be no recovery on the paper title as such ; and that in consequence of errors in the charge of the court, the jury were not constrained to pass upon and decide the questions of fact on which title under the statute of limitations or a right to recover on prior possession alone would depend. The result is that there must be a new trial.

1. The first link in the paper title is the tax deed. No execution for taxes was introduced. The deed stood alone save as it was supported by an affidavit of the mayor entered thereon, this affidavit being relied upon under the act of December 26th, 1837, applicable to assessments and sales made for taxes in the city of Brunswick. That act required that "the mayor shall publish a notice containing a description of the property taxed, the amount of the tax assessed upon it, and the name of the supposed owner, if known to the mayor, requesting him to pay said taxes within eight weeks from the date of said notice, which notice shall be published six weeks in the city of Brunswick, and in one newspaper printed in Milledgeville six weeks; and if said tax shall not be paid agreeably to the request in said notice, the mayor shall advertise the property upon which the tax has been assessed, for sale, giving three months no-

tice of the time and place of sale, the amount of tax for which the same is to be sold, and the name of the supposed owner, if known to the mayor, together with a description of the property to be sold, which notice shall be published three months in the city of Brunswick and the same length of time in one newspaper in the city of Savannah and in one newspaper in the city of Milledgeville. . . And the said mayor at the time of executing the conveyance of sale or title to any property sold for taxes, shall make and subscribe thereon his oath or affirmation that all the notices and advertisements required by the act, respecting the property thus conveyed, have been duly and regularly given, which oath or affirmation shall ever after be deemed and taken as conclusive evidence of these facts in all the courts in this State." The affidavit which the mayor made and subscribed on the deed now in question, declared that " all the notices required by the act of the General Assembly of the State of Georgia, assented to on the 26th of December A. D. 1837, entitled ' An act to incorporate the town of Brunswick, and to extend its jurisdictional limits,' &c. &c., so far as respects the property within described, have been duly and regularly given." This affidavit was not a compliance with the requirement of the act. The mayor did not make and subscribe the oath which the act dictated, but one less comprehensive both in letter and in substance. The notices had not only to be due and regular but they had to be duly and regularly advertised. To give them proper contents and to advertise them once might be treated as giving them duly and regularly, but the mayor had to see and know that the advertising of them was continued, the first notice for six weeks in the city of Brunswick and six weeks in one newspaper printed in Milledgeville, and the second notice for three months in the city of Brunswick and three months in one newspaper in each of the

cities of Savannah and Milledgeville. Suppose the mayor had been indicted for falsely swearing that all the advertisements required by the act had been duly and regularly given. It seems plain to us that he could successfully have defended himself against the charge by answering simply that he had not so sworn. He could have said, the act itself makes a distinction between the notices and the advertisements, because it requires the oath to include both and to declare that both were duly and regularly given. The affidavit omits advertisements;—why was that omission made if the mayor intended to do something different from what the act does, that is, make the word notices include advertisements as well as notices? It is possible that advertisments might be construed both as including the notices to be advertised and the prescribed publication of them by advertising; for to affirm that advertisements have been duly and regularly given could, without strain upon the language, be held to mean that they had the prescribed contents and had been published through the prescribed medium and for the length of time required. Be this as it may, it is enough that in prescribing the terms of the oath or affirmation, notices were evidently treated by the legislature as the things to be advertised, and advertisements as the advertising or publication of them. In view of the legal strictness which is observed in manifesting the validity of all sales for municipal taxes where it is sought to divest the owner of his title by means of such sales, we are clear that the defective affidavit before us is no substitute, as matter of evidence, for due proof of a tax *fi. fa.*, the levy of the same, and of a due observance of all the preliminaries prescribed by the statute under which the sale was made or purports to have been made. This deed, whether with or without the aid of the affidavit, affords no evidence of authority to sell for taxes.

2. Another infirmity of the deed, treating it as a basis of recovery in the present case, is that it contains nothing showing its application to the premises now in dispute. Nothing but the general and vague description set out in the second head-note appears in the deed to identify its application to any particular premises whatever. The deed does not represent that the property was seized as that of any named owner, or that it was in the possession or occupation of any person. In truth there is not the slightest hint or intimation in the whole instrument from which the least aid could be derived in applying the description to its subject-matter, nor was the map or plan referred to in the description introduced in evidence. If it had been, the description would apply as well to one lot or parcel on it as to another, so that if, according to it, that part of Brunswick known as Old Town contains more than one lot or parcel, and as appears by the deed from Mumford to Mrs. Sears it evidently does, the uncertainty as to which particular one was sold would remain and be fatal.

3. The ruling made in the third head-note applies to the deed from Henry and Harriet Merrill to Sylvester Mumford. That deed was admissible as an ancient document without proof of its execution. Its application to the premises in dispute is doubtful on the face of the deed itself, but it purports to convey a town lot in Brunswick of the same number as that sued for. With the requisite *aliunde* evidence the two lots might be shown to be identical one with the other.

4. The exact terms of the description used in the last mentioned deed are recited in the fourth head-note, and there is no impediment to invoking extrinsic evidence for the purpose of identifying the lot referred to as number twenty-four, and establishing its precise location in the town, or more properly the city of Brunswick.

5. King, the defendant below in the action, was a

stranger to the deed from Mumford to Mrs. Sears, and
though it was made pending his adverse possession that
would not render it invalid, because it was executed
after the adoption of the code, which abrogates the old
law prohibiting the conveyance of land while held ad-
versely to the maker of the deed. King being a stranger
to this deed, and, so far as appears, not holding under
either of the parties to it, had no concern with their pur-
pose in making it, though that purpose may have been
to enable Mrs. Sears to bring and maintain an action of
ejectment against him in the Federal court to recover the
premises. An inquiry into that matter might be rele-
vant were the question raised in that court for the pur-
pose of defeating a collusive action brought there as the
result of contrivance by a mere colorable conveyance to
give that court jurisdiction. But the jurisdiction of the
superior court is not dependent upon the citizenship of
the plaintiff, but upon the location of the land within
the county and upon that alone. The objection to the
deed as to its attestation by one witness whose commis-
sion as notary public had expired, and who was at the
time counsel for the grantee in the deed, and by another
witness who was the minor son and engaged in the law
office of the first witness, furnished no reason for exclud-
ing the deed as evidence. The objection as stated in-
volved in itself a concession that the deed was in fact
executed and delivered, and certainly the matter of
the objection would not, if established, render the deed
inoperative or interfere with its legal effect as a muni-
ment of title, for it would pass title as well without any
attesting witness as with two or more, whether either of
them was competent to attest it or not. Proper attesta-
tion is a requisite to prepare a deed for record, and
either probate or official attestation is requisite for the
same purpose. But as we understand the objection, the
point made was, not that the deed was not in a condi-

tion to be recorded, but that it was not valid as a conveyance. Deed good with one attesting witness only. *Downs* v. *Yonge*, 17 *Ga.* 295; *Lowe* v. *Allen*, 68 *Ga.* 225. Same as to mortgage. *Gardner* v. *Moore*, 51 *Ga.* 268. Deed good without any attesting witness. *Johnson* v. *Jones*, 87 *Ga.* 85. Same as to mortgage. *Marable* v. *Mayer*, 78 *Ga.* 60.

6. We have discovered no conclusive reason why the deed from the Merrills to Mumford would not serve as color of title to the premises in dispute, if as matter of fact the lot described as No. 24 be the same lot as that to which the declaration refers in each of the two demises which it contains. There is evidence that Mumford, by his tenant, had possession up to March, 1862. The tenant himself dates the beginning of this possession in the latter part of 1854 or early in 1855. Another witness dates the beginning one year earlier. Were the jury to accept the recollection of this witness as more reliable than that of the tenant himself, they could easily have found that the possession had continued for seven years before the first suspension of the statute of limitations by legislative act took place, which was December 14th, 1861. If the tenant's statement is to be preferred as the more reliable, then the statutory title most probably did not ripen; for while a suspension of the statute of limitations would not count against a possession of land held after the code took effect, it would hold against a possession which terminated before January 1st, 1863, the time when the code went into operation. It was the code which brought in the element of prescription as distinguished from limitation, and under the code prescription, as it has been held, runs though the statute of limitations be suspended. *Pollard* v. *Tait*, 38 *Ga.* 439. While, of course, prescription could be suspended by name, yet, being something merely analogous to but not identical with the statute of

limitations, it is not suspended when the latter alone is mentioned in the suspending act. It was contended in the argument that as the jury could have found from the evidence a title by prescription, using the term, for convenience, as we now use it under the code, it mattered not whether a recovery could have been had upon the paper title irrespective of the statute of limitations, or not. But it does matter, for under the charge of the court the jury were enabled to shun the question of prescription altogether. They were left free to find for the plaintiff on the paper title, when as matter of law that title was insufficient as a basis of recovery.

7. The same observation applies to another possible ground of recovery. Treating Mrs. Sears as claiming under her deed from Mumford who went into possession under color of title, if he remained for less than seven years before the statute of limitations was suspended, a recovery might or might not be had upon such prior possession alone (coupled with the deed from Mumford to Mrs. Sears), as against King, the defendant, who seems to have entered under a claim of right, but shows neither title nor any lawful right. There being a demise both from Mumford and Mrs. Sears, or rather from each of them, his prior possession alone would be a basis of recovery if he never intended to abandon the premises, but on finding that his tenant had gone out in time of the war, he intended to resume possession, and remained in that mind until he conveyed to Mrs. Sears. The *animus revertendi* would be matter for inquiry and determination by the jury on all the facts and circumstances of the case, and if they found it existed, they might restore the possession to Mumford or his vendee as against a mere wrong-doer, although Mumford had not shown either paper title or prescriptive title. But the charge of the court did not force the jury to pass on this question any more than it did on the question of

prescriptive title. Under that charge the verdict may have been reached irrespective of whether the *animus revertendi* on the part of Mumford existed or not.

8, 9. The questions of practice involved in the cross-bill of exceptions and ruled upon will be understood from head-notes 8 and 9, read in connection with the official report of the facts. The court erred in overruling the motion for a new trial.

*Judgment reversed. On cross-bill, affirmed.*