### BURDICK v. PETERSON et al.

(Circuit Court, S. D. Iowa, C. D. February 4, 1896.)

No. 1,952.

DEEDS—LOST INSTRUMENTS—ORAL PROOF.

In a suit to establish a lost unrecorded deed of certain real estate, alleged to have been given by one S. to one M. in exchange for other property conveyed by M. to S., both S. and M. being dead at the time of the trial, M.'s widow testified to the negotiations preliminary to the exchange; that she was present when M. executed his deed to S.; that M. left with S., who said he would now have his deed executed; that M. returned with a deed from S. to him, which she read and preserved, and which she described in all essential particulars, except the description of the land, as to which she remembered only that it was in the county where the land in question lay. Another witness testified that a few years later, M. having died in the meantime, his widow gave the deed to the witness to take to the place where the land lay, and make inquiries about taxes, etc., and he corroborated M.'s widow as to the contents of the deed, and testified that he gave it to one J., to have it recorded. J. testified that he did not have the deed recorded, because he was not provided with the money for the purpose, and that he left the deed with one P., and he produced a memorandum of the land conveyed by the deed, made by him at the time, and which corresponded with the land in question. These witnesses and J. testified to diligent, but unsuccessful, search for the deed. Held, that the making and delivery of the deed from S. to M. of the land in question was proved, and that the complainants were entitled to a decree establishing it.

Gatch, Connor & Weaver, for plaintiffs.
Charles A. Clark, for Tallman heirs.

WOOLSON, District Judge. The history of this case extends over many years. The real estate to which the controversy relates is the N. W. ¼ of section 3, in township 96 N., of range 8 W., in Winneshiek county, Iowa. Plaintiff claims title thereto under deed dated November 3, 1871, from the heirs of John Mosher. The bill herein alleges that Mosher became the owner thereof by deed in fee simple from one Andrew Sharp, said deed having been executed and delivered to said Mosher about July 15, 1852, and that said deed has been lost or destroyed, and was never recorded; that said Sharp has since died, and his heirs are made parties de-

fendant herein; that plaintiff having duly instituted, in the district court of Iowa in and for Winneshiek county, proceedings for the recovery of said real estate, against defendant Peterson, who was in the actual possession thereof, George C. Tallman intervened, claiming to be the owner in fee simple of said real estate, and, on application of said Tallman, the cause was removed to this court, and is now pending on the law docket of this court. Said Tallman having died, his heirs are made defendants herein. On the trial of said law action, plaintiff was unsuccessful, because of his inability therein to produce or to prove the said deed from said Sharp to said Mosher, and a motion for new trial was continued, to permit plaintiff to file this bill to establish, etc., said lost deed. The chain of title, as claimed by defendants through said Tallman, includes a deed of said real estate from said Sharp to said Tallman's grantors, of date June 25, 1870. The question of fact to be herein determined is whether Andrew Sharp did, about July, 1852, execute and deliver to John Mosher a deed in fee simple for the real estate above mentioned. If such is found to be proven, then decree must follow as prayed, leaving the effect of said deed or decree, as against the Tallman heirs, to be determined in the said action at law, now pending in this court.'

It would serve no useful purpose to minutely review the testimony herein. The widow of said John Mosher (since remarried, whose present name is Mary Hancock), in substance, states that Sharp and her late husband exchanged real properties, Mosher and his wife conveying to Sharp real estate in Princeton, Wis. She was not present at the execution of the deed from Sharp and wife to Mosher. She testifies to the negotiations preliminary to the transfer of property, to the circumstances attending the execution, at her residence, of deed from herself and husband to Sharp, in 1852, and that thereupon Sharp and her said husband and the notary left, Sharp saying that they would now go and have the notary take the acknowledgment of himself (Sharp) and wife to the deed to Mosher; that presently her husband returned, bringing with him a deed from Sharp and wife to said Mosher; that she read the deed, and remembers that it conveyed 160 acres of land in Winneshiek county, Iowa, to her said husband, and was signed by Mosher and his wife, Esther; that it was witnessed by two witnesses, whose names she cannot recall; that it was acknowledged before an officer, who signed his name and office thereto, but she is not able to state the description of the land as it was contained in the deed; that her said husband had gone to Iowa to examine the land before the trade was closed; that she and her said husband intended to move on the land, and occupy it as their homestead; that her husband was a blacksmith by trade, and they agreed between themselves that he should work at his trade another year, so as to get money with which to purchase farming tools, etc.; that, when she had read the deed over, she placed it among their other valuable papers in their residence; that, after she had put the deed away, she had a number of con-

versations with said Sharp as to the Iowa land which Sharp had deeded to her husband, and about their removal, as intended, to it; ·that her husband died within a year from the date of his transfer of deeds; and she produces a certified copy of the record of deed, dated July 15, 1852, from herself and husband to said Sharp.

Thus far the testimony fails to connect this deed from Sharp and wife to Mosher with the real estate in controversy. In 1856, Mrs. Hancock (formerly Mosher) gave the deed, from Sharp and wife to Mosher, to one Collar, for the purpose of having him write to Iowa and ascertain what taxes, etc., were against the land, and its condition. Collar's testimony corroborates the general testimony of Mrs. Hancock as to the contents of the deed, although not giving said contents so ·fully. He states that, some time after he received the deed from her, he gave the deed to Jesse B. Shaw, who was going to Iowa, to have him put it on record there. Shaw testifies that Collar gave him the deed about the year 1857, for the purpose of having it recorded. He says: "About the year 1857, in that year, I believe, I had placed in my hands by one Daniel Collar, of Racine county, Wis., a deed of conveyance,—a warranty deed, I believe,—given by one Andrew Sharp to one John Mosher. It conveyed the northwest fr. quarter Sec. three, town. ninety-six, range eight, in Winneshiek county. It was placed in my hands, to be recorded in Decorah, Ia." Again he says: "I had the deed in my hands for about two weeks. On the 22d day of May, 1857, as I verily believe, I placed said deed in the hands of one Wm. Tabor ·of Racine county, Wis., since which time I have· not seen said deed. I looked over the deed,—the description, the grantor and grantee,—and minuted the description of the land in my memorandum book." He produces this book, with the entry therein to which he refers, which is: "Left home May 22nd, 1857. Cash, $17. N. W. f. S. 3, T. 96, R. 8." He also states that the reason why he gave the deed to Tabor (with whom the Mosher children were at that time living), and did not take it to Iowa, was because they would not give him the money to pay the record fee of the deed. The testimony of Mrs. Hancock, Collar, Tabor, and Shaw shows that they have made diligent, but unsuccessful, search for the deed, and that they do not know where it is. The testimony is not clear and positive as ·to who last had possession of the deed; but it shows that, when the deed was last known to be in existence, it was in the possession of one of these parties. That there was a deed executed by Sharp and wife to Mosher, and delivered to Mosher, is proven. Defendants object there is no proof of the actual execution of the deed. The proof shows that Sharp and Mosher are both dead, and that diligent, but unsuccessful, search has been made for the whereabouts of the witnesses to the deed, and of the officer who took the acknowledgment of the Mosher-Sharp deed, and is supposed to have taken that of the Sharp-Mosher deed, and who left the Mosher residence with the expressed intention of taking the Sharp acknowledgment. The testimony of Mrs. Hancock

as to her repeated conversations with Sharp, after she had had the Sharp deed, and had placed it away with other papers at her residence, is convincing as to Sharp having executed the deed. But did the deed convey the real estate in question? The witnesses Mrs. Hancock, Shaw, Tabor, and Collar all testify to the deed describing Iowa land, and most of them as to the land being in Winneshiek county, Iowa. No suggestion appears in the proof that Sharp then owned more than one tract of land in that county. The abstracts of title in proof show that, at date of the Mosher-Sharp transfers, Sharp did own the real estate in controversy; and Shaw produces the memorandum book with the entry therein which he says he made of the description of the land, taking this description from the deed·from Sharp to Mosher, at the time he had this deed in his possession, in 1857. Without the testimony of Shaw and the memorandum he produces, made by him at the time, plaintiff could not recover herein. But, in my judgment, with these, uncontradicted and supported by other proof, the requirements are fully met which were laid down by Chief Justice Marshall (Tayloe v. Riggs, 1 Pet. 600), when speaking of a lost written agreement: "When a written contract is to be proved, not by itself, but by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily."

I find, therefore, that about July 15, 1852, said Andrew Sharp and wife executed and delivered to said John Mosher a deed conveying to said Mosher the N. W. fractional $\frac{1}{4}$ of section 3, in township 96 N., of range 8 W., in Winneshiek county, Iowa; and that plaintiff is entitled herein to decree accordingly, and for costs. Counsel for plaintiff will prepare decree accordingly, and submit the same to counsel for defendants. To all of which defendants except, and are given 60 days from entry of judgment within which to have signed and filed bill of exceptions.