## NORTHROP v. COLUMBIAN LUMBER CO.

(Circuit Court of Appeals, Fifth Circuit. February 7, 1911.)

No. 2,114.

1. Evidence (§§ 343, 353*)—Competency—Unrecorded Deed.

· The failure to record a deed to lands in Georgia, in that state, does not make the original deed inadmissible as primary evidence, nor a copy thereof, under proper circumstances, inadmissible as secondary evidence, nor does the fact of its registration in a foreign state affect the admissibility of either the original or a copy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1324–1330, 1420–1431; Dec. Dig. §§ 343, 353.*]

2. Evidence (§ 374*)—Proof of Execution of Deed—Admissibility of Secondary Evidence.

When the subscribing witnesses to a deed deny or forget their attestation, other evidence, direct or circumstantial, may be resorted to for proving its execution.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1583, 1584, 1587–1612; Dec. Dig. § 374.*]

3. Acknowledgment (§ 6*)—Defective Acknowledgment—Effect.

Under the law of Georgia, a deed signed and delivered is effective to convey title, although not so acknowledged as to be entitled to record under Code Ga. 1863, § 2668.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. § 46; Dec. Dig. § 6.*]

4. Evidence (§ 343*)—Proof of Lost Deed—Copy of Old Record.

An owner of land in Georgia in 1857 conveyed it with other property for the benefit of creditors by an assignment which gave the assignee power to sell and convey. In 1874 the assignee made a deed to the land under which defendant claimed, while plaintiff, who is a son of the assignor and brought action to recover the land in 1902, claimed under the will of his father, made a few days before his death in 1865, which devised the land. Among the papers of the testator was found after his death a deed, shown by the testimony of witnesses familiar with his handwriting to have been signed by the assignee, purporting to have been executed in 1864, and to reconvey the land to the assignor. Such deed was recorded in the office of the register of deeds of Charleston county, S. C., in 1868, but was afterwards lost or destroyed, never having been recorded in Georgia. The persons whose names purported to have been signed as attesting witnesses were produced, but, in the absence of the original deed and after such lapse of time, were unable to remember that they signed as witnesses, although their place of residence and other facts showed that they might have done so. Held, that under the rule relating to ancient documents and copies of old records, recognized by the courts of Georgia, and which would have rendered the deed itself admissible after 30 years, a duly certified copy of the South Carolina record was admissible, in connection with other evidence as tending to prove the execution and delivery of such deed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1315–1330; Dec. Dig. § 343.*]

5. Evidence (§ 230*)—Admissions by Grantor of Land.

Statements made by a grantor of land before he executed the deed and while the title was in him are admissible against his subsequent grantee, but statements or declarations made after his execution of the deed are not so admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 835–851; Dec. Dig. § 230.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6.** WILLS (§§ 487, 490*)—CONSTRUCTION—EVIDENCE IN AID OF CONSTRUCTION.

The rule is now unquestioned that extrinsic evidence in aid of the interpretation of wills is admissible for the purpose of showing the object of the testator's bounty, the property devised, and the quality of interest intended to be given, and evidence may be received as to every material fact relating to the person who claims under the will, to the property devised, and as to the circumstances of the testator and his family and affairs.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032, 1047–1057; Dec. Dig. §§ 487, 490.*]

**7.** WILLS (§ 487*)—CONSTRUCTION—EXTRINSIC EVIDENCE TO SHOW EXTENT OF INTEREST OF DEVISEE.

A provision of a will requesting the executors to have the property of the estate, and of another estate in which some of the children of the testator had an interest valued by competent persons appointed by them, the extent of the interests of the other children in land devised to be determined by such valuation was directory only, and the failure of the executors to have the valuation made does not defeat the rights of the latter children under such devise, but the value of the respective properties may be shown by any other competent evidence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. § 487.*]

**8.** EJECTMENT (§ 115*)—TITLE TO SUPPORT ACTION—INTEREST IN UNDIVIDED TRACT.

A plaintiff in ejectment, claiming under a will, is entitled to recover to the extent of his interest in the land, although it is less than the whole which he sues for.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. § 373; Dec. Dig. § 115.*]

**9.** EXECUTORS AND ADMINISTRATORS (§ 291*)—TITLE TO SUPPORT ACTION—DEVISEE—GEORGIA STATUTE.

The provision of the Georgia statute (Civ. Code 1895, § 3319 et seq.) that a devise of land does not pass title until the devise has been assented to by the executors is for the purpose of keeping the property subject to the testator's debts, and, if from the lapse of time there is a presumption that there were no debts, the consent of the executors may be presumed, and the devisee may maintain ejectment to recover the land from an adverse claimant without proof of formal consent.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 291.*]

**10.** VENDOR AND PURCHASER (§ 245*)—BONA FIDE PURCHASERS—NOTICE.

A debtor made a general assignment of all his property for the benefit of creditors in 1857; the deed containing power of sale, and expressly providing that, after payment of the debts, the assignee should hold the remaining property in trust for reconveyance to the assignor. The schedules attached showed the value of the property to be several thousand dollars in excess of the debts. In 1874 the assignee sold and conveyed certain land covered by the assignment. *Held*, that the purchaser and his grantees were charged with notice of the terms of the assignment and put on inquiry as to the right of the assignee to make the sale; that in an action of ejectment against a grantee by a devisee of the assignor, claiming under a prior unrecorded deed of the assignee reconveying the property, it was a question for the jury whether the lapse of time before the conveyance under which defendant claimed in connection with the other facts shown was sufficient to raise a presumption that the debts secured had been paid, and that, if such fact was found, defendant was not protected as a bona fide purchaser without notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 612; Dec. Dig. § 245.*]

**11.** WILLS (§§ 733, 747*)—TITLE TO SUPPORT ACTION—ACTION BY DEVISEE—NECESSITY OF PRIOR PROBATE OF WILL.

Both at common law and under Civ. Code Ga. 1895, § 3357, a devise of real estate takes effect upon the death of the testator, and the passing of title is not dependent upon the probating of the will. As the vesting of title in the devisee is not delayed until the probate of the will, the fact that the will was not probated till after suit was brought does not make the plaintiff's action subject to the objection that it is based on a title acquired subsequent to the bringing of the suit.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1819–1846, 1918–1933; Dec. Dig. §§ 733, 747.*]

**12.** COURTS (§ 368*)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

While the law of the state in which land is situated, either statutory or by decision, governs as to its alienation and transfer by deed or will, where there is an inconsistency in the decisions of the highest court of the state, and an action has been brought in a federal court to recover land in reliance on the law of the state as it was then established by decision, the court is not bound to follow a later decision which would deprive the plaintiff of his right of action.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 951; Dec. Dig. § 368.*]

**13.** WILLS (§§ 733, 747*)—TITLE TO SUPPORT ACTION—PROBATE OF WILL AFTER SUIT BROUGHT.

Under the law of Georgia, established by decision and as it had existed for many years, a devisee of land in that state, by a will executed in conformity with its laws and probated in a sister state, could maintain ejectment to recover such land, although the will had not been probated in Georgia. Plaintiff brought such an action in a federal court, claiming as devisee under a will duly executed and probated in South Carolina, pending which action the Supreme Court of the state overruled its former decision, and held that such an action could not be maintained until the will had been probated in Georgia. Thereupon, and before trial, plaintiff had the will probated in Georgia, and its probate was offered and received in evidence. *Held*, that such probate related back and confirmed plaintiff's title as of the date of the testator's death, and was sufficient to support the action.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1819–1846, 1918–1933; Dec. Dig. §§ 733, 747.*]

In Error to the Circuit Court of the United States for the Southern District of Georgia.

Action at law by George P. Northrop against the Columbian Lumber Company. Judgment for defendant, and plaintiff brings error. Reversed.

James N. Talley and Eldridge Cutts (John W. Haygood, Andrew H. Heyward, and R. J. Bacon, on the brief), for plaintiff in error.

George W. Owens and Samuel B. Adams, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

SHELBY, Circuit Judge. This is an action of ejectment for land situated in Georgia brought by George P. Northrop against the Columbian Lumber Company. The Circuit Court sustained objections to evidence offered by the plaintiff, and directed a verdict for the defendant. These rulings present the questions for decision here.

Both parties deraign title from Claudian B. Northrop, who was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

seised in fee of the land long before 1857. On January 5, 1857, he conveyed the land by deed of assignment to Edward P. Milliken, in trust, to secure debts. This deed conferred full power on Milliken to sell and convey the land. On May 19, 1874, Milliken, as assignee, conveyed the land to Groover, Stubbs & Co., and their title passed to the defendant, the Columbian Lumber Company, by mesne conveyances. If Milliken, when he conveyed the land on May 19, 1874, had not previously parted with or been shorn of the right to convey, then the title has unquestionably passed to the defendant.

The plaintiff claims that on August 6, 1864, Milliken reconveyed the land to Claudian B. Northrop. If this is true, Milliken had no title to convey in May, 1874, and the defendant has acquired none. Claudian B. Northrop died on February 26, 1865, having a few days before made his last will devising the land. The plaintiff claims as devisee under the will. Unless Milliken did reconvey the land to Claudian B. Northrop, the latter's will could not vest title to it in the plaintiff. It is clear, therefore, that the trial court rightly directed a verdict for the defendant if no legal evidence was produced from which the jury might reasonably have found that Milliken did reconvey the land to Claudian B. Northrop. The question of the execution and delivery of the reconveyance is the central and controlling question of fact upon which the case will ultimately be determined.

When the plaintiff offered a certified transcript of the reconveyance in evidence, the defendant objected to it because it was not a transcript from the proper Georgia court, and because it "is not attested as required by the Georgia law, not being either attested by or acknowledged before a commissioner of deeds from the state of Georgia, or a consul or vice consul, or the judge and clerk of a court of record." The plaintiff stated that the transcript was offered in connection with the other evidence, direct and circumstantial. The court sustained the objection, and the transcript of the reconveyance was rejected as evidence.

This ruling raises the first question to be considered.

[1] 1. The reconveyance by Milliken to Claudian B. Northrop was dated and purported to have been executed on August 6, 1864. It was recorded in the office of the register of mesne conveyances in Charleston county, S. C., February 22, 1868. It was never recorded in Georgia in the county where the land was situated. If the deed had been so executed as to authorize its recordation in Georgia and had been duly recorded there in the proper county, its loss being shown, a copy from the registry would have been admissible in evidence. Georgia Code 1895, § 3630. Not having been recorded as required by the Georgia laws, it gains nothing as an item of evidence or as a muniment of title from the registration laws of that state. Its being recorded in another state does not make the deed a muniment of title in Georgia; nor does the fact of its registration in a foreign state, unaided by other evidence or circumstances, make it admissible in evidence. But the failure to record it in Georgia does not make the original deed inadmissible as primary evidence, nor a copy thereof, under proper circumstances, inadmissible as secondary evidence.

[2] The two witnesses to the execution of the deed by Milliken were produced; but, in the absence of the original deed which, apparently, they had signed as witnesses, and after the lapse of so many years, they could not remember the fact that they had signed as witnesses. The place of their residence and other facts showed that they might have so signed. When the subscribing witnesses deny or forget their attestation, other evidence, direct or circumstantial, may, of course, be resorted to to prove its execution. Reinhart v. Miller, 22 Ga. 402, 416, 68 Am. Dec. 506; Buchanan v. Simpson Grocery Co., 105 Ga. 393, 31 S. E. 105; Standback v. Thornton, 106 Ga. 81, 31 S. E. 805. This rule is recognized by statute. Georgia Code 1895, §§ 5245, 5246.

The existence of the original reconveyance was proved by several witnesses who were acquainted with the handwriting of Milliken, and who swore it was signed by him. The evidence shows that the deed was among the papers of Claudian B. Northrop after his death, and that it came into the hands of one of his executors, and was delivered by the executor to a nephew of the deceased. That it cannot be found or produced is well proven by the executor, the nephew and others. The parol evidence is such, therefore, as would fully justify the finding that an original deed was executed by Milliken to Claudian B. Northrop, that it was delivered to him, and that it has been lost or destroyed and cannot be produced. This evidence on the issues in the case would be for the jury. It is inconsistent with the right of Milliken to make the subsequent conveyance as assignee. Can it be denied that any evidence of the existence of such a deed of reconveyance, after its date, would tend to support and confirm the evidence cited? The certified copy offered shows that such a deed was recorded and examined in the South Carolina office in 1868. It could not have been copied in the records there unless a writing purporting to be such deed was produced and placed in that office. If the plaintiff had produced the apparent original deed, it never having been recorded or copied, it would not have been so conclusive as to the existence of such a paper in 1868 as is this record. The apparent original deed could be more easily fabricated than this record, and, while now there might be a motive for the fabrication, apparently there could have been none when the record was made. Discussing the admissibility of a copy of an old record, made inadmissible as such by the charge of forgery under the Texas statute, the court said:

"The record made in 1843 evidences with more certainty than the original deed would, if produced, that the deed was more than 30 years old; for skillful, indeed, would be the spoliation of a record book which could not be detected." Holmes v. Coryell, 58 Tex. 680, 688.

And the copy was held admissible under the general rules of evidence notwithstanding the statute.

A copy of a lost deed not recorded in the proper county was received in evidence in Van Gunden v. Virginia Coal & Iron Co., 52 Fed. 838, 3 C. C. A. 294, in connection with other evidence, as tending to prove an issue in the case. In Webster v. Harris, 16 Ohio, 490, a certified copy from the office of the county recorder of an instrument not re-

quired to be recorded was received in evidence to prove its contents; it being shown that the original was lost. It has been held that a certified or examined copy of an instrument is the "next best" evidence when the instrument is lost. 2 Elliott on Evidence, § 1266. Various circumstances and facts reasonably tending to show the existence, execution, or delivery of a deed, its loss having been proved, have been held admissible in evidence. Sicard v. Davis, 6 Pet. 124, 8 L. Ed. 342; Payne v. Ormond, 44 Ga. 514; Terry v. Rodahan, 79 Ga. 278, 5 S. E. 38, 11 Am. St. Rep. 420; Emanuel v. Gates, 53 Fed. 772, 3 C. C. A. 663; Burdick v. Peterson (C. C.) 72 Fed. 864.

But there is another and a stronger reason why this record is admissible. The deed purports to have been executed more than 40 years ago, more than 38 years before this suit was brought, and was recorded 34 years before the suit. If the original deed had been produced by the plaintiff—it being more than 30 years old—in connection with the other evidence in this case tending to show its execution and delivery, it would have been admissible, under the familiar rule relating to ancient documents, without further proof, regardless of the question of its record. King v. Sears, 91 Ga. 577, 18 S. E. 830. When the alleged ancient original is lost, and an ancient purported copy is offered, made by private hand, the copyist being unknown or dead, it seems to have been long accepted that the copy may be received under the ancient document rule. 3 Wigmore on Evidence, § 2143, p. 2910. The record in the South Carolina office, which, in effect, was offered, is an ancient copy. The reason for its admission is stronger than the reasons for admitting a copy made by private hand, because it is entitled to some consideration as an official statement, and the long publicity of it has given opportunity for correction and opposition. "Accordingly, there has been a general disposition, on one ground or another, to accept such an ancient record, though otherwise inadmissible, as sufficient, after the lapse of time." 3 Wigmore on Evidence, § 2143, p. 2911. In Baeder v. Jennings (C. C.) 40 Fed. 199, 215, Mr. Justice Bradley held that a deed, although recorded in the wrong office, was admissible under the rule as to ancient documents.

[3] As to the objection that the reconveyance was not shown by the parol evidence to have been duly acknowledged: If it was signed and delivered, it was effective; for, conceding that it was not so executed as to entitle it to record under the Georgia statute (Georgia Code 1863, § 2668), it may have been sufficient, if attested by one witness, two witnesses, or even without a witness, to have transferred the title from Milliken to Claudian B. Northrop. Johnson v. Jones, 87 Ga. 85, 13 S. E. 261; Lowe v. Allen, 68 Ga. 225; King v. Sears, 91 Ga. 577, 18 S. E. 830; Howard v. Russell, 104 Ga. 230, 30 S. E. 802.

We are of opinion that the objections to the transcript should have been overruled.

[4] 2. The record shows the exclusion of a letter written by Milliken that tended to prove that he had knowledge of the existence of the release or reconveyance, and also the exclusion of some admissions or statements made by him on the subject. Since we hold that

the certified copy of the release itself is admissible in evidence, the evidence of the admissions may not be offered again, or, if offered, may meet with no objections. [5] It is sufficient, therefore, to say that the rule is well established that the statements of a grantor of land, made before he executed the deed and while title was by hypothesis in him, are receivable in evidence against any grantee claiming under him. 2 Wigmore on Evidence, § 1082. His admissions or declarations after he had executed the deed would not be received against his grantee. These familiar rules are adopted by the statute. Georgia Code 1895, § 5193.

[6] 3. Formerly, we might now say anciently, it was the rule that the law should fix the meaning of the will and of other written documents without reference to the circumstances of the testator or makers of the document. The history of the evolution of the law resulting in the modern rule is well stated in 4 Wigmore on Evidence, § 2470. The rule now is unquestioned that extrinsic evidence in aid of the interpretation of wills is admissible for the purpose of showing the object of the testator's bounty, the property devised, and the quality of interest intended to be given. Evidence may be received as to every material fact relating to the person who claims under the will, and to the property devised, as to the circumstances of the testator and his family and affairs, so as to lead to a correct decision of the quantity of interest the claimant is entitled to by the will. This is true as to every disputed point respecting which it can be shown that a knowledge of extrinsic facts can aid in the right interpretation of the will. 4 Wigmore on Evidence, § 2470; 2 Underhill on Wills, § 909.

The third item of the will is as follows:

"I give, devise and bequeath all of my lands in the state of Georgia to my wife and children, to be distributed among them according to law for the distribution of an intestate's estate in the state of Georgia; provided, however, that in case the children by my first marriage should ever receive their shares of the real estate situated in the state of New York to which they are entitled upon my death, then I direct that the portion of my Georgia lands which would descend to my children shall be so distributed or divided that the shares of my children by my second marriage shall be equal in value to the shares of my other children together with their shares in the New York estate, so far at least as the Georgia land may be adequate to effect this equalization of their estate among my children; and in order to this end I desire as soon as may be convenient that the New York estate and the Georgia lands be valued by proper and competent persons to be appointed by my executrix and executors, or such of them as may qualify within one year of my death. If the children's portion of the Georgia lands was not of equal or greater value than two shares of the New York estate, it would then all belong to the children by my second marriage."·

The plaintiff proved, or offered to prove, that the testator was twice married. By his first marriage there were surviving him seven children; by his second marriage two children. His first wife died the owner of valuable real estate situated in New York. The testator had a life estate as tenant by the curtesy in this property, and at his death it would become the property of his seven children by his first marriage. At the date of the will the Civil War was in progress. The testator was a citizen of South Carolina, and at that time—1864—he could not be sure that the New York property would be received at

his death by those entitled to it as the heirs of his first wife. It is at least indicated by the values placed on the Georgia lands and by the estimated value of the rentals of the New York real estate found in the schedule of assets attached to the deed of assignment that the New York real estate greatly exceeded in value the Georgia lands. These are facts showing the situation of the testator and the condition of his estate, and they were admissible in evidence in aid of the interpretation of his will and as showing the share of the plaintiff. If the seven children of the first marriage received the New York property, by the terms of the will they were not to share equally in the Georgia lands with the two children of the second marriage; and, if the New York property was of certain value in excess of the Georgia property, all of the latter was to belong to the children of the second marriage. This is shown by the last lines of the third item:

"If the children's portion of the Georgia lands was not of equal or greater value than two shares of the New York estate, it would then all belong to the children by my second marriage."

There were only two children of the second marriage. One died in infancy. The plaintiff is the other.

[7] We cannot sustain the defendant's contention that the failure of the executors to appoint "proper and competent persons" to value the property is fatal to the plaintiff's right of recovery. The executors could not defeat the will by such failure. The provision is merely directory, and, if the values were so well known as to make the formal valuation unnecessary, it might be dispensed with, the devisees consenting by acquiescence.

The fact that no such persons were appointed by the executors, and that no formal valuation was made, could be shown by parol. Cowan v. Corbett, 68 Ga. 66, 70; Vizard v. Moody, 117 Ga. 67, 43 S. E. 426.

If there is record proof that the children of the first marriage received the New York property, it would be the best evidence; otherwise, the fact may be proved by parol.

If it be true that the New York property was of such value in comparison with the value of the Georgia property that, by the terms of the will, the two children of the second marriage would be given all the Georgia property, we see no reason why that fact cannot be proved by any competent evidence. It is a fact susceptible of proof by parol.

The question of the inheritance of the share of the deceased child of the second marriage need not now be considered. That is, of course, controlled by the Georgia statutes.

[8] In any view of the case, without regard to the value of the New York property, there is no construction that could be placed on the will that would show that the plaintiff was not entitled to some interest in the land. If on the full development of all the facts it should appear that he was not entitled to the whole estate sued for, he could at least recover such share as was shown to be vested in him. Lewis v. McFarland, 9 Cranch, 151, 153, 3 L. Ed. 687; Note to Ballance v. Rankin, 54 Am. Dec. 415, 416; Warvelle on Ejectment, § 124.

[9] 4. It is contended that the direction of the verdict should be sustained because it is not shown that the executors of the will assented to the devise before the suit. Georgia Code 1895, § 3357. It is true that all property, both real and personal, by statute, being assets to pay debts, no devise passes title until the assent of the executor is given to such devise (Id. § 3319); but the assent of the executor may be presumed from his conduct (Id. § 3320). The purpose of withholding the vesting of the devise in the devisee is to make it subject to the testator's debts. If, from the lapse of time, a presumption was created that there were no debts, no reason would exist for withholding the vesting of the devise, nor for refusing to permit the devisee to sue, and the consent of the executor might be presumed. Flemister v. Flemister, 83 Ga. 79, 81, 9 S. E. 724. The devisee plaintiff would, of course, be entitled to prove the assent of the executor by any legal evidence.

[10] 5. The defendant claims that it is an innocent purchaser without notice, and that, therefore, the direction of the verdict was right. It is true that the record of the deed in South Carolina afforded no notice to subsequent purchasers of the land in Georgia. Failing to record the deed in the proper office in Georgia would make it lose its priority over a subsequent duly "recorded deed from the same vendor, taken without notice of the existence of the first." Georgia Code 1895, § 3618. The essential elements that constitute a bona fide purchase are a valuable consideration, the presence of good faith, and the absence of notice. If the defendant is chargeable with notice of the prior conveyance, the fact that it was not recorded is immaterial. If it is chargeable with notice that Milliken as assignee had no right to make the sale under the assignment at the time he did make it, the defendant could not defend as an innocent bona fide purchaser. If it appears that a party is chargeable with knowledge or information of such facts as are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, if prosecuted with reasonable diligence, would lead to a discovery of the conflicting claim, or would lead to a discovery that the proposed vendor had no right to sell, then the inference arises that he acquired the information constituting actual notice. 2 Pomeroy's Eq. Jur. (3d Ed.) § 597. It is sufficient to charge him with notice of the infirmity in the title he is about to acquire. The deed of assignment from Northrop to Milliken and the deed from Milliken to Groover, Stubbs & Co. are links in the defendant's chain of title, and the defendant is, of course, chargeable with notice of their contents. The deed of assignment made in 1857 embraced not only the Georgia lands, but all of Northrop's property, which consisted of real estate situated in South Carolina, personal property, and the income arising from real estate in New York. The estimated value of the property, as shown by the schedules attached to the assignment, was $93,000; the amount of the debts secured, $62,920.84. In the schedules the Georgia lands were estimated at $10,000. The estimated value of the assets exceeded the amount of the debts $30,079.16, and, if the slaves are omitted, the excess would still be $14,129.16. An assignor may, of

course, overvalue his property and underestimate his debts, but on the face of this assignment it does not appear improbable that the property assigned, excluding the Georgia lands, would be sufficient to pay the debts secured. The assignment conferred on Milliken the authority to sell all the property at public or private sale to pay the debts, and then we find this express provision:

"After all the said debts shall have been paid in full then In Trust to reconvey to the said Claudian B. Northrop the surplus if any shall remain of the estate hereby assigned."

The deed of assignment itself gives notice that it is the duty of the assignee to reconvey the remaining property after the debts are paid. Milliken, as assignee, did not sell the Georgia land till May 19, 1874; that is, 17 years, 4 months, and 14 days after the execution of the assignment to him. The long delay is at least significant. Would it not, in connection with the terms of the assignment, naturally suggest inquiry? If 20 years had elapsed, there would have arisen a presumption that the debts had been paid. A like presumption may arise in a shorter time when connected with other circumstances. Each case must rest upon its own circumstances. The question of the presumption of payment within a less time than 20 years should be left to the jury. 2 Jones on Mortgages, § 916; 2 Wharton on Evidence, § 1360; Angell on Limitations, § 11; 3 Elliott on Evidence, § 2577. If the facts are such as to charge the defendant with notice that the debts were paid when the assignee sold the land to pay them, he could not be held to be a purchaser in good faith.

In view of the fact that this case will be remanded for a new trial, it is inexpedient to comment further on the evidence relating to this point. We have referred to it sufficiently to indicate on what our opinion is founded that the court was not justified in directing the verdict on the theory that the defendant was to be protected as an innocent purchaser without notice.

[11] 6. It is contended that the direction of a verdict for the defendant should be sustained because the will had not been probated in Georgia prior to the bringing of the suit.

This contention, it is urged, is sustained by the well-settled principles that a plaintiff in ejectment must recover on the strength of his own title, and cannot rely on the weakness of that of his adversary. And that the plaintiff must recover, if at all, upon the state of title that existed at the beginning of the suit; that evidence of any after-acquired title is wholly inadmissible, as was correctly held in Deas v. Sammons, 126 Ga. 431, 55 S. E. 170; following Johnston v. Jones, 66 U. S. 209, 224, 17 L. Ed. 117. In this connection the defendant relies on Chidsey v. Brookes, 130 Ga. 218, 60 S. E. 529, where it is held that a devisee under a will executed and probated in another state cannot maintain a suit to recover land adversely held in Georgia until the will has been probated in Georgia.

[12, 13] To determine whether or not these contentions are conclusive against the plaintiff's right to recover, we must inquire (a) whether plaintiff's title under the will accrued before or after he

brought his suit; and (b) whether this case is controlled by Chidsey v. Brookes, supra.

(a) The testator died before the suit was brought and the will was probated in South Carolina, but it was not probated in Georgia till after the action was begun. To sustain the view that the plaintiff relies on an after-acquired title, it must be held that the title did not pass by the will until it was probated in Georgia.

At common law, which prevails in Georgia except where changed by statute, the probate of a will devising real estate was unknown. Just as a deed vested title on delivery, a will vested title at the testator's death. The title which passed by the will was, of course, not dependent upon or delayed for the probate of the will when there was no provision for its probate. As to the vesting of title, the will was effective from the date of the testator's death. And, in the absence of statutes requiring probate, a will was proved like other written instruments by calling the witnesses to it, or by secondary evidence when primary evidence could not be had.

It has already been held in this circuit, Pardee, Circuit Judge, speaking for the court, that a devise of real estate takes effect upon the death of the testator, and its operation is not postponed to the time of proving the will in the state where the land lies. White v. Keller, 68 Fed. 796, 15 C. C. A. 683. The Georgia statute is to the same effect:

"A will takes effect instantly upon the death of the testator, however long the probate may be postponed." Georgia Code 1895, § 3257.

This is merely confirmatory of the common law as to titles. Hill v. Hill, 88 Ga. 612, 616, 15 S. E. 674. The statutory requirement that a will should be probated does not relate to the vesting of title. It is a means of authenticating the instrument as evidence. It dispenses in many cases with other proof of the instrument that would be required at common law. The probate is not the source or foundation of title. The title is derived from the will. The probate, therefore, has relation to the time of the testator's death—the time when the right under the will accrued. Hall's Lessee v. Ashby, 9 Ohio, 96, 34 Am. Dec. 424; Crusoe v. Butler, 36 Miss. 150; Whitehead v. Taylor, 10 A. & E. 210, 37 Eng. C. L. R. 95; Smith v. Milles, 1 T. R. 475. In Sutphen v. Ellis, 35 Mich. 446, 448, Cooley, Chief Justice, said:

"On the second point there is no difficulty. When the will was probated, it affirmed the title of the beneficiary under it from the time of the death (Blamire v. Geldart, 16 Ves. 314; Sweet v. Chase, 2 N. Y. 73; Terrill v. Public Admr., 4 Bradf. Sur. [N. Y.] 245); and the probate would relate back so as to make valid whatever she had done previously, and which, under the will after probate, she would have had the right to do."

We conclude, therefore, that whatever title was conferred on the plaintiff by the will relates to the date of the testator's death, and not to the date of the probate of his will. It follows that the rule as to after-acquired title is not applicable.

(b) We have now to inquire whether the instant case is controlled by Chidsey v. Brookes, supra, and whether that decision justified the Circuit Court in directing a verdict for the defendant.

There is no doubt about the correctness of the defendant's contention, as has been often held by this court, that we must look to the law of the state in which the land is situated for the rules which govern its alienation and transfer by deed or will. It is not questioned in this case that the will is in proper form and was executed before the requisite number of witnesses to comply with the Georgia statutes as to devises of real estate. The controversy bears on the question of the probate of the will.

After the death of the testator in South Carolina, the will was duly probated in that state on September 12, 1865, and this action was brought on July 10, 1902, before the probate of the will in Georgia. The will was duly probated in Georgia in March, 1909, before the trial, which occurred in July of that year. The contention is that the failure to probate the will in Georgia before bringing the suit is fatal to the plaintiff's right to recover. The statutes of Georgia relating to foreign wills are quoted in Knight v. Wheedon, 104 Ga. 309, 30 S. E. 794. It is sufficient to say that since 1886 (Acts Ga. 1886, p. 32) provision has been made for the probate of wills made by residents and citizens of other states devising real estate situated in Georgia. Since 1886 the Legislature has made several changes in the law, but they are referred to in the case last cited as simply changing "the law of evidence on the subject." As we have indicated, no denial is made that the will was executed and probated in conformity to the Georgia statutes. It is useless therefore to quote them.

In 1860 the Supreme Court of Georgia, in Doe v. Roe, 31 Ga. 593, held that a will probated in the state of Maryland may be a good muniment of title to real estate in Georgia, even though the will was neither probated nor recorded in the latter state. In Kerr v. White, 52 Ga. 362, 370, decided in 1874, the court said:

"To make out the case, it is to be shown that the will is executed according to the laws of Georgia. This is admitted. Its probate in Tennessee makes it a good muniment of title in this state."

These decisions were concurred in by all the judges, and were in full force and recognized as the law of the land at the time the plaintiff brought his suit. Under these decisions, the probate of the will in South Carolina was all that was necessary. This condition of law was not peculiar to Georgia, but existed in other states. In Long v. Patton, 154 U. S. 573, 14 Sup. Ct. 1167, 19 L. Ed. 881, the court held that in Illinois a will probated in Virginia is as available in proof as if probated in Illinois. We, of course, recognize the rule that the probate of a will in one state does not establish its validity as a will devising real estate in another state, unless the laws of the latter state permit it. Robertson v. Pickrell, 109 U. S. 608, 3 Sup. Ct. 407, 27 L. Ed. 1049. When the plaintiff brought his suit before probate in Georgia but after probate in South Carolina, the law, as declared by the court of last resort in Georgia, was that a foreign will probated and recorded in a sister state was a good muniment of title to real estate in Georgia, "even though the will was neither probated nor recorded in this state." The plaintiff, relying on these cases, brought his suit, and afterwards, in 1907, the decision in Chidsey v. Brookes, supra, was rendered, ex-

pressly overruling Doe v. Roe, supra. If the last decision was in direct conflict with the plaintiff's right to recover, this court would be required to decide which of the conflicting decisions should control this case. Ordinarily we would follow the last ruling. When there is inconsistency in the opinions of the state court, the general rule is that the federal courts will follow the latest settled adjudications in preference to the earlier ones. 4 Fed. Stat. Anno. p. 519, and cases there cited. But, when rights are acquired under existing state law and decisions of the state's highest court, the federal courts are not required to follow later decisions in conflict with such rights. Loeb v. Columbia Township Trustees, 179 U. S. 472, 493, 21 Sup. Ct. 174, 45 L. Ed. 280. And the Supreme Court has declined to follow a single decision of a state Supreme Court, it "being opposed to the entire course of previous decisions in that state." Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428. We are not considering the question whether Chidsey v. Brookes announces a correct rule. We assume that it does. But it clearly changes an existing rule established by the Georgia Supreme Court, on which the plaintiff relied when he brought his suit. If the rule announced in the last case presented a barrier to the rights which the plaintiff had previously asserted, we would, under the circumstances, be reluctant to hold that it should be held applicable to this case.

There are distinctions, however, between the instant case and that of Chidsey v. Brookes. It is there held that a devisee under a will executed and probated in another state cannot maintain a suit for land in Georgia until the will has been probated in Georgia. The will in that case had never been probated in Georgia either before or after suit was brought. Here, the plaintiff, relying on the existing law of the state, brought the suit before probating the will in Georgia, but, after a different rule was announced, the will was probated in Georgia before the trial and its probate offered and received in evidence.

Bleidorn v. Pilot Mt. M. & C. Co., 89 Tenn. 166, 172, 15 S. W. 737, was an ejectment suit where the plaintiff claimed under a will that had been probated in New York. The objection urged by defendants was that it was never probated in Tennessee "until some years after the institution of this action." Referring to this objection, which raised the exact question presented in the instant case, Lurton, J., speaking for the court, said:

"Pending this litigation this will was duly proven and recorded in this state, and a copy of the record admitted as evidence without objection. The effect of this registration was to confirm and perfect the title of complainants, and this confirmation relates to the date of the execution of the will. It was not the acquirement of a new title after suit brought, but the confirmation of a defective title. The effect of the recording of the will was not to confer a title as of the date of the registration or probate, but to vest and confirm title as of the date of the testator's death."

There is nothing in Chidsey v. Brookes in conflict with this ruling that the probate of the foreign will is effective although made after the beginning of the action.

The plaintiff proceeded under the law as it existed, which authorized him to sue and to rely on the foreign probate; and when a new

rule was adopted, requiring probate within the state where the land lies, he had the will probated in the state. The new decision should not deprive him of the benefit of his action brought lawfully under the rule that existed at the time he sued. He should at least be permitted to comply with the new rule announced. If it be conceded that ordinarily a will should be probated in the state where the land lies before suit is brought to assert title conferred by the will, yet, when a rule exists allowing suit and recovery by virtue of the foreign probate, and plaintiff acts under such rule, his suit should not be defeated by the announcement of another rule, or, at least, he should be allowed to comply with the new rule after it is announced, although his compliance is subsequent to his action, but before the trial.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.