## McSWAIN *et al. v.* RICKETSON, sheriff, *et al.*

1. A return of appraisers setting apart a year's support, which does not
purport to embrace the entire estate of the decedent, but merely des-
ignated items of property, which contains, as one item, the following:
"175 acres of land, more or less, of lot of land No. 49 in the 6th Dis-
trict," is, as to such item, too vague and uncertain to be capable of
enforcement.

2. Where a mother and her children are in possession of a tract of land,
which was the property of a deceased husband and father at the time
of his death, a judgment in a proceeding to eject the mother as an in-
truder is not binding upon the children, when it appears that they are
not her tenants, do not claim under her, but are asserting, independently
of her, their title as heirs at law of their deceased father.

3. The judge erred in not granting the injunction as prayed for.

Submitted May 20,—Decided August 8, 1907.

Petition for injunction. Before Judge Parker. Coffee superior court. April 13, 1907.

Elizabeth McSwain and others brought a petition in equity against Ricketson, sheriff, and J. J. Jowers, alleging that the plaintiffs were the children and heirs at law of Elijah Jowers; four of them being sui juris, and five of them being minors; that their father died seized and possessed of 150 acres of land, situated on the west side of lot No. 49 in the 6th district of Coffee county, Georgia, known as the home place of Elijah Jowers; that there was no necessity for administration upon his estate, and no administration was had; that plaintiffs are in possession of the land; that in 1906 J. J. Jowers made an affidavit to eject Sarah Jowers, their mother, from the land as an intruder; that she filed a counter-affidavit and the papers were returned to court, and, the defendant not appearing, judgment was entered that a writ issue directing the sheriff to dispossess the defendant; that in 1907, under such writ, Sarah Jowers was dispossessed; that since that time J. J. Jowers has insisted that the plaintiffs be also dispossessed under the writ, and the sheriff has stated that unless restrained by law he will dispossess them. It is alleged that unless the sheriff is enjoined, the plaintiffs will be dispossessed and irreparably damaged. The prayers of the petition were, that J. J. Jowers and the sheriff be enjoined from interfering with the possession of plaintiffs, for general relief, and for process. By amendment it was alleged that if the plaintiffs were dispossessed they would be forced to get homes, either by renting or purchasing, elsewhere, and if J. J. Jowers is placed in possession he will cut the timber, and such conduct on his part will be a continuing trespass and work irreparable damage and cause a multiplicity of suits. The answer of J. J. Jowers denied that three of the plaintiffs, who were sui juris, were in possession. It admitted the averments as to the suing out of the warrant to eject Sarah Jowers as an intruder, and the proceedings thereafter following, and also admitted that it was the purpose of the defendant to cause the sheriff to dispossess the plaintiffs, but denied the averments in reference to the irreparable damages. In the answer to the amendment the defendant averred that all of the timber suitable for sawmill and cross-tie purposes,

12

as well as cypress timber, had been cut off of the land, and that the timber thereon was not sufficient for plantation purposes; and that the plaintiffs were, notwithstanding, selling and cutting the same. The defendant J. J. Jowers also filed a demurrer, alleging that the plaintiffs had an adequate remedy at law, and that there was no equity in their bill. At the hearing it was established by evidence that Sarah Jowers had been dispossessed in the manner described in the petition. The evidence was conflicting as to whether some of the plaintiffs, who were sui juris, were in possession, but there seems to have been no conflict as to the fact that the minors were in possession of the land. The defendants offered in evidence a certified copy of the proceedings before the ordinary of Coffee county, setting apart a year's support to Sarah Jowers out of the estate of her husband. The return of the commissioners did not purport to set apart the entire estate, but certain property was set apart by description. One item of the return was in the following language: "175 acres of land, more or less, of lot of land No. 49 in the 6th District." The plaintiffs objected to this evidence, for various reasons; among them being that the description of the land therein was so vague and indefinite that no title or right passed under the judgment setting apart the year's support so far as it related to the land. The evidence also disclosed various transactions between Sarah Jowers and J. J. Jowers, in which she seems to have dealt with the land in controversy as if it was her own property and she had a right to sell and convey the same. It appeared from the evidence that the land in controversy was all of the land owned by Elijah Jowers at the time of his death. There was evidence tending to establish that in the different transactions with J. J. Jowers, Sarah Jowers was attempting to secure a more suitable home for herself and her minor children, but it does not appear that the minor children had directly received any benefit from these transactions. On the contrary there was positive evidence that no part of the consideration of the deed from Sarah Jowers to J. J. Jowers was used either for the support of herself or her minor children. There was evidence that a part of the consideration of the deed was the payment of a mortgage made by Elijah Jowers in his lifetime upon a mule, which was also set apart as a year's support. The judge refused the injunction so far as it sought to restrain the sheriff from dis-

possessing the plaintiffs, and granted it so far as to restrain the defendant from cutting the timber on the land in controversy. The plaintiffs excepted.

*Lankford & Dickerson,* for plaintiffs.

*C. A. Ward* and *F. Willis Dart,* for defendants.

COBB, P. J. (After stating the facts.)

1. Land may be set apart as a year's support, and the effect of the judgment is to vest the widow with such title or interest in the land that she may, in order to raise money for the purpose for which the year's support is set aside, convey the same in her own name, and divest all interest of herself and her minor children therein. The judgment setting apart the year's support being, in effect, a conveyance to her of the interest of her deceased husband in the property, the description of the property must be such as to render it capable of identification. If the description is so vague and indefinite that the property can not be identified, the title to the estate is not divested by the judgment setting apart the year's support. That certainty which is required in a deed, or other conveyance, is also required in a judgment setting apart a year's support, certainly so far as land is concerned. If the judgment now in question had purported, on its face, to have set apart all of the property, or all of the lands, of the deceased, parol evidence would have been admissible to show what lands were owned by the deceased. But there is nothing in the judgment to indicate that it was the intention of the commissioners to set apart the entire estate. They dealt with the property intended to be covered by items, certain articles of personal property being designated, and then what purports to be a description of a tract of land is inserted. The title to the estate is not divested unless this description is sufficient to identify the land. The only description is 175 acres, more or less, in a lot of a given number, in a given district. It does not appear, from the description, in what county the land is located, nor, so far as that is concerned, in what State. It might be inferred that it is in the State of Georgia; but can we infer that it was necessarily in Coffee county? The law does not require that a year's support should be set apart in the county in which the land is located. The year's support is set apart in the county in which the decedent died, and the property set apart may be located in another county. And even if it be conceded that

lot No. 49 in the 6th district of Coffee county was referred to, what portion of that lot is set apart? Even the number of acres is not definitely stated. The words of indefiniteness, "more or less," are used. The shape of the tract is not referred to, nor can it be by any implication arrived at. If the description had been a definite number of acres in a given corner of the lot, the land could have been identified. *Payton* v. *McPhaul,* 128 *Ga.* 510, 58 S. E. 50. The description of the land was so vague and indefinite that the judgment setting apart the year's support, so far as this item was concerned, was absolutely void. *Luttrell* v. *White-head,* 121 *Ga.* 699, 49 S. E. 691; *Lee* v. *English,* 107 *Ga.* 152, 33 S. E. 39. This case is distinguished from the case of *Moore* v. *Moore,* 126 *Ga.* 735, 55 S. E. 950, and the cases there followed, for the reason that the return of the appraisers did not purport to set apart the entire estate.

2. The children of Sarah Jowers were not parties to the proceeding to eject her as an intruder. They were not her tenants; they did not claim under her. Their claim of title rests upon ownership by their father at the time of his death. They were not bound by the dispossessory proceedings against their mother. The sheriff has no authority to dispossess them under that proceeding.

3. The judgment setting apart the year's support not having the effect to divest the title of the heirs, the transactions entered into by the mother, in which she dealt with the same as if she had acquired title in the proceeding setting apart the year's support, did not estop the heirs from asserting their title to the property, unless it appears that they have received some benefit from the transactions which she has entered into, with a full knowledge of the fact that she was dealing with their property. While there is evidence to indicate that the mother was looking after the interests of the minor children and seeking to acquire a more desirable home, it does not definitely appear that the minor children have received, directly or indirectly, any benefit from these transactions. Nor does it appear that the adult heirs have received any benefit therefrom. The evidence was not sufficient to make out a case of estoppel either against the adult heirs or the minor children. The facts as developed at the final hearing may show a different condition of affairs; but so far as indicated by the present record, there was no estoppel upon any of the plaintiffs as to

their right to assert their title as heirs at law to the land in controversy. There was a conflict of the evidence as to whether some of the adult heirs were in possession, but there was no dispute that the minor heirs were in possession of the property. They were rightfully in possession. J. J. Jowers has shown no right to dispossess them; and the judge should have granted the injunction as prayed for.

*Judgment reversed. All the Justices concur.*