## BLACKWELL, administrator, *et al. v.* PARTRIDGE.

1. The issue of prescriptive title depending on the question of fact whether a deed covered the premises in dispute, a verdict for the defendants was not demanded on that issue.

2. A return of appraisers to set apart a year's support was not admissible in evidence, the sole description of property set apart being " one vacant lot, containing one acre, in the Town of Lincolnton."

3. It was not error to exclude the testimony of two of the appraisers, that the lot mentioned in that return embraced the premises in dispute.

4. A deed conveying the interest of the grantor in the land so set apart was properly rejected as immaterial.

5. The issues involved being whether the deed under which the defendants claimed title by prescription embraced the premises in dispute, and not whether there was any deficiency in the number of acres sold by the grantor to the grantee therein, instructions undertaking to apply to the rights of the defendants the principle of section 4122 of the Civil Code were unwarranted by the evidence, and tended to mislead and confuse the jury.

No. 3636. July 21, 1923.

Complaint for land. Before Judge Shurley. Lincoln superior court. February 1, 1923.

Lillian Partridge brought her complaint against J. M. Bussey, J. W. Blackwell, and Manley Hawes, to recover a six-sevenths undivided interest in " all that tract or parcel of land situated, lying, and being in the State of Georgia, County of Lincoln, in the Town of Lincolnton, containing one and eight-tenths (1-8/10) acres, more or less, bounded on the north by lot of land now or formerly owned by the estate of T. H. Remsen Jr., deceased; on the east by street running in a southerly direction by lands of W. N. Albea, J. E. Deason, and Mrs. May Wilkinson and children, being known as the Lincolnton-Amity road and being the road now used as a part of the Thomson-Lincolnton mail route; on the south by street running in front of what is known as the T. H. Remsen Sr. home place, by the home of C. L. Groves and to the public cemetery; and on the west by the Lincolnton high school lot." Then follows a more particular description of the tract of land sued for. She claimed title to a one-seventh undivided interest in the premises, as heir at law of her father, Thomas H. Remsen Sr., who, she alleged, died seized and possessed of these premises, leaving his wife, and the plaintiff and her four brothers and sister as his heirs at law. She claimed a two-sevenths interest in the premises under a deed from Mrs. T. P. Moseley, an heir at law of T. H. Remsen Sr., dated Sept. 13, 1917. She alleged, that T. H. Remsen Sr. died Jan. 20, 1904; that Mary Jessie Remsen, his widow, died in 1906, leaving Mrs. T. P. Moseley her only child and sole heir at law; that there has been no administration on the estate of Mary Jessie Remsen, and that by virtue of her death Mrs. T. P. Moseley became the owner of a two-sevenths undivided interest in said premises, the interest she claimed as heir at law of her father and the interest she inherited as heir at law of her mother. Petitioner claimed a one-seventh undivided interest under a deed from N. P. Remsen to her, dated Sept. 19, 1917; a one-

seventh undivided interest under a deed from Rem Remsen to her, dated Sept. 20, 1917; and a one-seventh undivided interest under a deed from Harry F. Remsen to her, dated Sept. 29, 1917. Plaintiff, T. H. Remsen Jr., Rem Remsen, and N. P. Remsen were children by the first wife of Thomas H. Remsen Sr. Harry F. Remsen was a child by his second wife, and Mrs. Moseley was a child by his last wife. He left these six children and his last wife as his sole heirs at law. Maude L. Remsen was, on motion, made a party defendant, as the original defendants claimed the premises in dispute under her. The defendants claimed title by prescription under a deed from Mrs. A. M. Dawson, guardian of Annie Remsen, now Mrs. Moseley, to T. H. Remsen Jr., husband of Maude L. Remsen, dated Oct. 6, 1908, which conveyed "one lot of land in the Town of Lincolnton, said State and county, containing one acre, more or less, bounded on the north by the Lincolnton Academy lot, east by public road, south by lot of T. H. Remsen, and west by Lincolnton Academy lot; same being the lot formerly owned by Jessie Remsen, deceased, mother of said Annie Remsen;" and under the record of a year's support set aside to Maude L. Remsen for herself and minor children by the court of ordinary of Lincoln County, in which the appraisers set aside with other property the dwelling-house and lot on the south side of street running by C. L. Groves' residence to cemetery, and also one vacant lot on the north side of street adjoining schoolhouse lot.

On the trial the plaintiff testified that her father was Thomas H. Remsen Sr. His other children were Tom, Rem, Pottle, Nathan, Harry, and Annie. Her father died in January, 1914, in Columbia County, in possession of the land in dispute. It is adjoining the new Baptist church lot on the corner in front of her father's old home. The map shown her is a map of the land in dispute; the corner lot is now in dispute. Her father bought that lot from her aunt, Salina F. Murray. Mrs. Glendenning, a sister of Mrs. Murray, was in possession of the other portion. The land in dispute is bounded now on the north by the new Baptist church, on the east by a street, on the south by a street, on the west by C. L. Groves' property, she thinks. Frequently heard Mrs. Murray, Mrs. Glendenning, and her father discuss this land. There were two acres in this tract; but her father owned more land out west of it. Mrs. Glendenning owned this particular acre, and Mrs. Salina

F. Murray owned the other. Has seen the deed to this corner lot to her father from Salina F. Murray. The deed had been destroyed when Mrs. Moseley's house burned. Has seen the deed several times and read it. It was bounded on the north by the Glendenning lot, on the east by street leading to Raysville, on the south by a street, and her father's old home place was right across the road, and on west by land owned then by her father. The plat does not cover all the land sued for. The deeds handed her (from Mrs. T. P. Moseley, Rem Remsen, N. P. Remsen, and Harry F. Remsen to her) cover their interests in the land in dispute. Her father cultivated that land during his lifetime.

It was shown that there was no administration upon the estate of T. H. Remsen Sr. Mrs. T. P. Moseley, for plaintiff, testified: She is a sister of plaintiff. Her mother was Mary Jessie Remsen. Her grandmother on her side was Bathsheba Glendenning. She is familiar with the land in dispute; saw a deed from Salina F. Murray to her father. Has seen plat shown her. That deed conveyed the two lots, the one in dispute and the other that belonged to her grandmother. That plat covers both. That deed to her father conveyed one acre of land, and witness remembers how land was described in the deed. It was burned while in her possession. She owned an acre which belonged to her mother, inherited from her mother, and it came to witness at her death. That is the lot on which the Baptist church is standing. It is included in the plat. Her mother's sister, Mrs. A. M. Dawson, was her guardian. Her mother died Dec. 26, 1906. Her guardian sold one acre of it to T. H. Remsen Jr. for her support. She did not own this land in dispute; her mother never claimed it. Always heard her say it belonged to sister of witness. Heard Mrs. Murray say her father owned the acre immediately in front of the house; he was in possession of it at time of his death. The deed from her aunt to her father was dated in 1889; it covered the land in dispute. Witness owned one acre in Lincolnton, and Mr. S. F. Murray owned an acre in front of old Remsen home before her father got possession of it. J. M. Bussey and Manley Hawes talked to witness about this land, and Bussey tried to get her to say she claimed both acres; so did Hawes. That was before they purchased the land. Witness told them the land did not belong to her, it belonged to her sister, and she was going to help

her get it. (Cross-examined) Witness was not · present when Mrs. Dawson sold the land to Tom Remsen Jr. She was at school, but Mrs. Dawson told her who bought it. She got $150 for it. This case has been tried twice. Does not think she testified at the first trial: " I don't remember anything about the description of the land; I know it was an acre, more or less." She testified at first trial five or six years ago. She might have testified: " I was familiar with that deed that I have just spoken of that Mrs. Murray gave my father. It was bounded on the north by the schoolhouse lot.· The street, ·at least, runs to the school house, then the other side was by Mrs. Lina's, and then by the road next to the old home place. As to how it was bounded on the west, I think Mr. Groves had some land on the west." She is sure she did not testify: " I don't know anything about the description of the land; I know it was an acre, more or less." As to the other statement, she was not responsible at the time, having just loss her baby, and was not conscious of what she was saying.

Plaintiff introduced in evidence the deeds from the heirs at law of her father to her, referred to above. Plaintiff also introduced the following plat:

"Georgia, Lincoln County. The above plat is a true representation of a lot of land situated in the Town of Lincolnton, Georgia, belonging to T. H. Remsen, and contains two (2) acres. Surveyed Nov. 8, 1889.                    George Wright, S.

"Filed Record Jan. 22, 1923.    W. T. Dunaway, C. S. C. L. C. Ga."

The defendants introduced in evidence the record of the testimony of Mrs. T. P. Moseley at the trial of this case at the April term, 1919, as follows: "The deed calls for one acre, more or less. I don't remember the boundaries as given by the deed. I only remember the sum and the two witnesses. . . I don't remember anything about the description of the land." Defendants also introduced testimony of Mrs. T. P. Moseley at the second trial of the case in April, 1922: "I was familiar with that deed that I have just spoken of that Mrs. Murray gave my father. It was bounded on the north by the schoolhouse lot; the street, at least, runs to the schoolhouse; then the other side was by Mrs. Lina's, and then by the road next to the old home place. As to how it was bounded on the west, I think Mr. Hawes had some land on the west."

Mrs. Maude L. Remsen testified for defendants as follows: Her husband was Thomas H. Remsen Jr., who died in November, 1915. He left surviving him the witness and four children. Knows what was usually called the vacant lot across the street from residence of T. H. Remsen Jr. Her husband as far back as October, 1908, seven years before his death, was in possession of that land, and this land that is being sued for. He bought it from Mrs. Dawson, guardian. He went into possession of that land under this deed, and held it until his death. She went into possession afterwards under the year's support. Does not know how much land was advertised for sale. At the time of his death, T. H. Remsen Sr. was in possession of this land. Never heard of that lot being known as the Salina F. Murray lot.

Samuel F. Wilkes, ordinary, testified for defendants that he is familiar with the land in controversy and has known it all his life. The deed from Mrs. Dawson, guardian, to T. H. Remsen Jr. being exhibited to witness and he being asked if the description in it covered the land in dispute, he replied: "That covers the entire lot." The attorney for the plaintiff read to the witness this

description: "That lot or parcel of land lying in the Town of Lincolnton, said State and county, containing one acre, more or less, adjoining lands now or formerly owned by C. R. Strother, Salina F. Murray, T. H. Remsen and others, for the purpose of the education and maintenance of her said ward," and asked witness if that description fitted the lot in dispute. The witness replied: "I don't know about Salina F. Murray owning any there."

Dr. W. B. Crawford, for defendants, testified: Mr. May, Mr. Harnesberger, and witness acted as appraisers to set aside a year's support to Mrs. Maude L. Remsen, return of which was exhibited to him; and when they set aside "one vacant lot, north side of said street, adjoining schoolhouse lot," they had reference to the lot adjoining the schoolhouse and extending out to the road. Whether it was intended to include the lot that ran all the way back to the road, he doesn't remember. It was on the north side of the road and the schoolhouse was on the north; he reckons it should have been between them. His recollection is they were all one lot, but his mind is not clear about it. He does not know that this is the lot in dispute. (Cross-examined) Heard Mrs. Jessie Remsen make a statement about the land; and if he recalls correctly, she stated that all the children had gotten something but Lillie, and that she had to have that lot. Does not know that Mrs. Salina F. Murray was ever in possession of one portion of the lot and Mrs. Glendenning the other.

Manley Hawes testified for defendants: He did not undertake to get Mrs. Moseley to say she claimed both acres; nor did any one in his presence. — J. J. Harnesberger for defendants testified: Knew T. H. Remsen Jr., and knows the land in dispute and that Tom Remsen claimed to own it. Does not know he ever told Mrs. Partridge and other heirs that he owned it. All the tract in front of the house was vacant at the time. Heard Remsen say the land was his. He cultivated it in 1909 until the time of his death. — W. C. Powell testified for defendants: Knows the vacant lot in dispute and that T. H. Remsen Jr. was in possession of it and claimed to own it. He worked it. (Cross-examined) Was one of the commissioners to set it aside for year's support way back yonder. Young Tom Remsen was not in possession of it at that time; have heard him since repeatedly say he was. Impression of witness was it belonged to him because he saw him cultivate it.

— W. R. Groves testified for defendants: Has been living in Lincolnton 38 years. Knew T. H. Remsen Jr., and knows lot in dispute. Lives 100 yards from it. Knows T. H. Remsen Jr. had possession and claimed to own it from 1908 up to his death. Heard him say it was his. He didn't say anything about buying it under a deed. He said to witness: " Mr. Groves, I want you to come up here and bust up some cotton-stalks on my lot," or something like that. Heard him say all this was his land, but does not know why he said it. The land he was referring to was all that up there where the house was, and in front of the house where the church was, and all in front of the house. He said all that was his. — J. W. Blackwell, for defendants, testified he examined the tax records of Lincoln County from 1913 to 1916, and Mrs. Lillian Partridge did not give in any town lots for taxes.

Defendants introduced in evidence the record from the court of ordinary consisting of the application of Mrs. A. M. Dawson, as guardian of Annie Remsen, now Annie Moseley, for an order to sell the tract of land described as " that lot or parcel of land lying in the Town of Lincolnton, said State and county, and containing one acre, more or less, and adjoining lands, now or formerly owned by C. R. Strother, T. H. Remsen, Salina F. Murray, and others;" and the order regularly granted by that court authorizing the guardian to sell said property. Defendants introduced deed from Mrs. A. M. Dawson, guardian of Annie Remsen, to Thomas H. Remsen, husband of Maude L. Remsen, dated Oct. 6, 1908, mentioned above. Defendants introduced also the record of the year's support set aside to Maude L. Remsen for herself and minor children, in which the appraisers set aside the dwelling-house and lot on the south side of the street running by C. L. Groves' residence to cemetery, and also one vacant lot on the north side of street, adjoining schoolhouse lot.

The plaintiff testified she paid taxes on the land for 1916-1917. It was admitted that the bond for title given by the defendant, Maude L. Remsen, to the other defendants, covered 2-8/10 acres.

The jury returned a verdict for the plaintiff. The defendants moved for a new trial on the general grounds, and by amendment on the further grounds: (1) that under the undisputed evidence T. H. Remsen Jr. acquired title by prescription under color of title. (2) That the court erred in excluding from the jury the

record of setting apart, as a year's support to Mrs. Jessie Remsen and her minor children out of the estate of her deceased husband, Thomas H. Remsen Sr., on June 20, 1904, "one vacant lot, containing one acre, in the Town of Lincolnton,". it being admitted and proved that the two minor children were Harry Remsen and Annie Remsen, now Mrs. Moseley; and defendants contending that it had been proved by Mrs. Moseley that this was the vacant lot owned by her father in Lincolnton. (3) That the court excluded from evidence the testimony of W. C. Powell and Alec Willingham, to the effect that the vacant lot containing an acre which they as commissioners assigned to Mrs. Jessie Remsen as the year's support was the lot in controversy, this testimony being offered to identify the lot so set aside, and to show that the vacant lot was considered as having one acre, though the survey made when the widow of T. H. Remsen Jr. sold it to Bussey, Blackwell, and Hawes shows that it contained more than one acre. (4) The court excluded from evidence a deed made by Harry F. Remsen on June 13, 1908, to T. H. Remsen Jr., which conveyed for a consideration of $650 his one-half undivided interest in the Remsen residence, bounded on the east by a public road and south and west by lots of C. L. Groves, and all his interest he had or might have in the lots set aside to the widow of Thomas H. Remsen Sr. and minor children. (5) The court erred in charging the jury as follows: "In a sale of lands, if the purchase is per acre, a deficiency in the number of acres may be apportioned in the price. If the sale is by the tract or entire body, a deficiency in the quantity sold can not be apportioned. If the quantity is specified as 'more or less,' this qualification will cover any deficiency not so gross as to justify the suspicion of wilful deception or mistake amounting to fraud; in this event the deficiency is apportionable. The purchaser may demand a rescission of the sale or an apportionment of the price according to relative value;" the error assigned being that this charge was irrelevant. (6) The court erred in charging the jury as follows: "If, however, you should believe that there was a deficiency in the land in the acreage, and that deficiency was not sufficient to justify the suspicion of fraud, and that Mrs. Remsen took it as stated to you, then she would also be entitled to a verdict at your hands; but if you should believe that the description of the land was not sufficient to carry the number of acres, or if

you should believe it would suggest fraud, and you should believe that T. H. Remsen did not enter into possession of the property — that is, the Murray lot, — if he did not enter it and hold it peaceably, publicly, as his own, then I charge you that, as to that lot, you would be authorized to find for the plaintiff;" the errors assigned being that the charge was irrelevant and tended to confuse the jury. (7) In no event was plaintiff entitled to recover five sixths of the land sued for. The court overruled the motion for new trial, and this is the error assigned.

*John T. West & Son,* for plaintiffs in error.

*C. J. Perryman,* contra.

HINES, J. 1. The defendants insist that a new trial should be granted on the ground that, under the uncontradicted evidence, they had shown a good title by prescription under color of title based upon a deed from Mrs. A. M. Dawson, as guardian of Annie Remsen, now Mosley, to T. H. Remsen Jr., under whom they claim, dated Oct. 6, 1908. The evidence conclusively shows possession of the premises in dispute by T. H. Remsen Jr. for more than seven years prior to the institution of this suit. But whether the above deed covers the premises in dispute is not shown by the uncontradicted evidence in the case, but depends upon a question of fact which can only be determined by the jury. So we can not determine as a matter of law, under the facts of the case, that a verdict is demanded in favor of the defendants on this ground.

2. The plaintiff claims title to a six-sevenths undivided interest in the premises in dispute, consisting of a one-seventh interest therein which she claims as heir at law of her father, Thomas H. Remsen Sr., deceased, who died seized and possessed of the premises, and of a five-sevenths interest therein which she claims as purchaser from other heirs of her deceased father. For the purpose of showing title out of the plaintiff the defendants offered in evidence the record of the year's support set aside to the widow and two minor children of the deceased. The return of the appraisers described the property set aside as " one vacant lot, containing one acre, in the Town of Lincolnton." The trial judge excluded this evidence on the ground that this description of the property as just quoted was so vague and indefinite as to render it incapable of identification; and to this ruling the defendants excepted. The court did not err in excluding this evidence. Where

the return of appraisers setting aside a year's support does not purport to set aside the entire estate of the decedent, but sets aside designated items of property, such items must be so described as to be capable of identification by the aid of extrinsic evidence; and unless this is done, the return is void and incapable of enforcement. *McSwain* v. *Ricketson,* 129 *Ga.* 176 (58 S. E. 655); *Beavers* v. *Wilson,* 144 *Ga.* 231 (86 S. E. 1089). It is not necessary that the return itself should contain such a description as will enable the court, without the aid of extrinsic evidence, to ascertain precisely what is set aside. *Andrews* v. *Murphy,* 12 *Ga.* 431. The description is not too vague if the court can, by the aid of parol evidence which does not add to, enlarge, or in any way change the description, fit it to the property set aside or conveyed. *Callaway* v. *Beauchamp,* 147 *Ga.* 17 (92 S. E. 538). If the return furnish the key to the identification of the land set apart, that is sufficient. *Price* v. *Gross,* 148 *Ga.* 137 (96 S. E. 4). But parol evidence is inadmissible to supply a description which is entirely wanting in the writing. *Douglass* v. *Bunn,* 110 *Ga.* 159 (35 S. E. 339). So a description as follows: " 424 acres of land in Tattnall County," was held by this court to be too vague and indefinite. *Tippins* v. *Phillips,* 123 *Ga.* 415 (51 S. E. 410). The description, " one vacant lot, containing one acre, in the Town of Lincolnton," is not more certain than the description, " 424 acres of land in Tattnall County." The latter is too uncertain because applicable to any 424 acres of land in Tattnall County. The former is too uncertain because applicable to any vacant lot in the Town of Lincolnton containing one acre. If the proof showed that the deceased owned only one vacant lot, containing one acre, in the Town of Lincolnton, the description might be good. Lick *v.* O'Donnell, 3 Cal. 59 (58 Am. D. 383); *Lane* v. *Head,* 148 *Ga.* 650 (97 S. E. 852); *King* v. *Sears,* 91 *Ga.* 577 (18 S. E. 830). But where there is more than one lot of land answering the description, belonging to the grantor or the person from whose estate the year's support is taken, the deed or the return would be void for uncertainty, the grantee or beneficiaries having no election as to which piece he or they will take. Lumbard *v.* Aldrich, 8 N. H. 31 (28 Am. D. 381). The contention of counsel for the defendants that the evidence shows that the deceased owned only one

vacant lot, containing one acre, in the Town of Lincolnton, is not borne out by the evidence in the record.

The rulings in *Shore* v. *Miller,* 80 *Ga.* 93 (4 S. E. 561, 12 Am. St. R. 239), *Ainslie* v. *Eason,* 107 *Ga.* 747 (33 S. E. 711), *Brice* v. *Sheffield,* 118 *Ga.* 128 (44 S. E. 843), *Crawford* v. *Verner,* 122 *Ga.* 814 (50 S. E. 958), and *Hancock* v. *King,* 133 *Ga.* 734 (66 S. E. 949), are not in conflict with what is ruled above. In *Hancock* v. *King* the description in the return of the year's support was "450 acres of land, including homestead." This court construed "homestead" to mean the home of the deceased, and held that, by the aid of extrinsic proof, it could be shown what lands constituted his home.

3. As the judge properly excluded the record, which attempted to set aside a year's support to the widow and minor children of Thomas H. Remsen Sr., he did not err in ruling out the evidence of two of the commissioners to the effect that the vacant lot mentioned in their return embraced the premises in dispute. This evidence thus became irrelevant.

4. The court excluded from evidence, when offered by the defendants, a deed from Harry F. Remsen, to T. H. Remsen Jr., dated June 13, 1908, which conveyed for a consideration of $650 his half interest in the Remsen residence, and all the interest he had or might have in the lots set aside to the widow of Thomas H. Remsen Sr., and her minor children. In the absence of proof that a year's support embracing the lot in dispute had been set aside to this widow and these minor children, this deed was immaterial and was properly rejected by the court.

5. The defendants complain of the instructions of the court to the jury set out in the 5th and 6th grounds of the amendment to their motion for new trial. These instructions are given in full in the statement of facts. The instruction in the 5th ground embraces the principle enunciated in the Civil Code (1910), § 4122. This section deals with the apportionment of price when there is a deficiency in the number of acres in a sale of lands. The instruction set out in the 6th ground undertakes to apply this principle of the above section of the Code to the rights of the defendants in this case. The court erred in giving these instructions to the jury, because they were not applicable to the issue involved, the true issue being whether the deed under which the defendants

prescribe embraces the premises in dispute, and not whether there is any deficiency in the number of acres which the grantor in the deed sold to the grantee. When land is conveyed by metes and bounds, whether there be more or less than the quantity named in the deed, the purchaser obtains the whole of it. *Benton* v. *Horsley,* 71 *Ga.* 619; *Ray* v. *Pease, 95 Ga.* 153, 170 (22 S. E. 190); *Baker* v. *Corbin,* 148 *Ga.* 267, 269 (96 S. E. 428). The general rule is that where instructions are given which are not warranted by the evidence and which are calculated to mislead and confuse the jury, the error requires the grant of a new trial. *Central Ga. P. Co.* v. *Cornwell,* 139 *Ga.* 1 (76 S. E. 387, Ann. Cas. 1914A, 880); *Mitchell* v. *Langley,* 148 *Ga.* 244 (96 S. E. 430). These instructions fall within this general rule, and require the grant of a new trial.      *Judgment reversed. All the Justices concur.*