## 24526.  HAWTHORNE *et al. v.* POPE.

DECIDED JUNE 15, 1935.  REHEARING DENIED JULY 13, 1935.

*Sutherland, Tuttle & Brennan, H. W. Dent, H. A. Hall,* for plaintiffs in error.

*S. Holderness, S. Holderness Jr., A. E. Wilson,* contra.

SUTTON, J.  J. H. Pope died intestate, and his wife was appointed temporary administratrix of his estate.  Mrs. Pope was in a nervous and distressed condition over the death of her husband, and, being unable to attend to business, gave to her son, Frank S. Pope, power of attorney to act for her in winding up her husband's estate as administratrix.  At the time of his death J. H. Pope was indebted to the Virginia Carolina Chemical Corporation for fertilizer.  Mrs. Pope was the beneficiary of certain life-insurance carried by her husband, in the approximate sum of $8000.  Hawthorne was the agent of the fertilizer corporation and as such visited the home town of Mrs. Pope immediately after the death of her husband, and was constantly with her son, Frank S. Pope, en-

deavoring to collect the indebtedness due by J. H. Pope to the fertilizer corporation. The insurance above referred to was paid to Frank S. Pope for his mother, and Hawthorne, by means of threats and fraudulent representations, induced and persuaded Frank S. Pope to deposit the insurance money in the bank to the account of Mrs. Pope as administratrix of her husband's estate, and to draw a check on the account in her name as administratrix, in favor of the fertilizer company, in payment of the indebtedness owed by his deceased father. At the time Hawthorne induced Frank S. Pope to do this he was acting as agent for the fertilizer company and knew of the distressed and anguished condition of Mrs. Pope on account of the recent death of her husband, and also knew that the proceeds of the insurance policies belonged to her individually, and were not the property of the estate of her deceased husband. All this was done without the knowledge or consent of Mrs. Pope; and as soon as she found out about it she procured counsel to institute suit for the recovery of the money. Mrs. Pope filed suit against Hawthorne and the fertilizer company, in which she set up the above facts. The petition was demurred to and the demurrer overruled, and this court affirmed that ruling. *Hawthorne* v. *Pope,* 48 *Ga. App.* 239 (172 S. E. 574). The defendants filed a special plea in bar, in which they alleged that the plaintiff had instituted a prior suit against them and her son in the city court of Carrollton, for money had and received, "based upon the same alleged facts and transactions," and that this was an election of remedies by the plaintiff, and she could not thereafter institute an action against them sounding in tort. The trial judge dismissed this plea in bar, reciting in his order that "It appears from said plea in bar, as amended, that defendants demurred to the petition in the city court of Carrollton upon the grounds, (*a*) that the petition set forth no legal or valid cause of action; (*b*) that the petition contained a misjoinder of parties; (*c*) that the petition contained a misjoinder of causes of action; and (*d*) that if construed as an action at law, it was insufficient to authorize a judgment thereon. The court is of the opinion that such grounds of demurrer, as set forth, were good for the reason that it clearly appears that the city court of Carrollton was without jurisdiction, and that said suit could not have proceeded to a legal judgment against the defendants in this case. If the plaintiff had elected to dismiss the case

there as to the resident defendant and the agent of the defendant company, the suit would then have been against the nonresident defendant corporation, and the court can not hold that the remaining defendant would not have moved to dismiss the case as to it, which it would have had the right to do. The plaintiff yielded to the contentions of the defendants and dismissed the case in Carroll county. The court is of the opinion that the plaintiff should then be permitted to proceed as if the Carroll county suit had not been filed." To this order the defendants excepted pendente lite. The case proceeded to trial, and the trial resulted in a verdict for the plaintiff. The defendants moved for a new trial, the motion was overruled, and they excepted.

1. "When a person has two or more conflicting and inconsistent remedies for the same wrong, his election and actual prosecution of the one to a favorable or adverse decision is a bar to the others." *Stokes* v. *Wright*, 20 *Ga. App.* 325 (93 S. E. 27) ; *City of Elberton* v. *Auld*, 28 *Ga. App.* 60 (110 S. E. 424), and cit.

(*a*) "Where one with actual knowledge or notice of the substantial facts is in a situation in which he may elect between two inconsistent positions or proceedings, the choice of his position or proceeding must be made before bringing suit. He can not bring either action without selecting and determining to act and occupy a position consistent with that action or position and inconsistent with the other. The choice of one of such alternative positions or proceedings operates at once as a final and absolute bar to the other." *Land* v. *Hall*, 46 *Ga. App.* 404 (167 S. E. 711). "By preponderance of authority, the mere commencement of any proceeding to enforce one remedial right, *in a court having jurisdiction to entertain the same* (italics ours), is such a decisive act as constitutes a conclusive election, barring subsequent prosecution of inconsistent remedial rights." *Board of Education* v. *Day*, 128 *Ga.* 156, 164 (57 S. E. 359) ; *Kennedy* v. *Manry*, 6 *Ga. App.* 816, 819 (66 S. E. 29) ; Robb *v.* Vos, 155 U. S. 13 (15 Sup. Ct. 4, 39 L. ed. 52).

(*b*) While the election of one of two inconsistent remedies is to be regarded as a waiver of any rights under the other, a person who attempts to institute an action based upon a remedial right which he supposes he has, but in fact does not possess, is not thereby precluded from thereafter, in a court having jurisdiction, asserting

his real rights. *Puett* v. *Edwards,* 17 *Ga. App.* 645 (88 S. E. 36). If the plaintiff had no remedy in the city court, then she could not elect. The election of remedies presupposes more than one inconsistent remedy and an election between them. *Sparks* v. *Fort,* 29 *Ga. App.* 531, 537 (116 S. E. 227); *Rowland Co.* v. *Kell,* 27 *Ga. App.* 107 (107 S. E. 602). If the city court of Carrollton was without jurisdiction, the action in that court could never amount to such an election as would bar the plaintiff from bringing a suit in a court having jurisdiction. The suit for money had and received in that court (if the same would be properly termed as such) was no remedy at all, and, of course, could not be a choice of inconsistent remedies. *L. & N. R. Co.* v. *Pferdmenges, 8 Ga. App.* 81, 82 (68 S. E. 617). The court did not err in disallowing defendants' plea in bar.

(*c*) By filing and insisting upon the special demurrers, these defendants are precluded from complaining that the city court of Carrollton had no jurisdiction of the action in assumpsit filed by the plaintiff as against them. *Haber-Blum-Bloch Hat Co.* v. *Friesleben, 5 Ga. App.* 123 (62 S. E. 712).

2. Under the facts and circumstances of this case, the trial judge did not abuse his discretion in allowing plaintiff's counsel to ask plaintiff's son, on direct examination, this question: "Was any threat made up to that time?" Defendants' counsel objected to this question as leading, and complained that the plaintiff thereby elicited from the witness material evidence prejudicial to defendants, which evidence went to the very gist of the alleged cause of action. Code of 1933, § 38-1706, Code of 1910, § 5872; *Sikes* v. *DeLoach,* 166 *Ga.* 887 (144 S. E. 655); *Colley* v. *Williams,* 122 *Ga.* 841 (50 S. E. 917); *King* v. *Westbrooks,* 114 *Ga.* 307 (40 S. E. 262); *Hinsman* v. *State,* 14 *Ga. App.* 481 (81 S. E. 367); *S. A. L. Ry. Co.* v. *D'Avignon,* 39 *Ga. App.* 111 (146 S. E. 518); *Higdon* v. *Williamson,* 140 *Ga.* 187 (78 S. E. 767); *Rome Ry. & Light Co.* v. *Jackson,* 31 *Ga. App.* 730 (121 S. E. 875). This court will not hold as a matter of law in this case that the trial judge erred in overruling defendants' objections to several questions propounded to plaintiff's son, a witness in her behalf, on the ground that they were leading questions, the same being relative to the state of the bank account of his mother as administratrix on a certain day and as to what funds composed the same. A trial

502

judge is given great latitude and discretion in permitting counsel to examine and lead a witness in an effort to get to the true facts, even though the witness may be a favorable and willing one; and, therefore, ordinarily, and unless there has been a palpable and illegal abuse of the above discretion, resulting in prejudice and injury to the complaining party in a material manner, reversible error will not be predicated by this court upon rulings of the trial court as to the allowance of leading questions in the examination of a witness. *Caison* v. *State,* 171 *Ga.* 1 (154 S. E. 337) ; *Williams* v. *State,* 16 *Ga. App.* 697 (85 S. E. 973) ; *Parker* v. *Georgia Pacific Ry. Co.,* 83 *Ga.* 539 (10 S. E. 233) ; *City of Rome* v. *Stewart,* 116 *Ga.* 738, 740 (42 S. E. 1011) ; *Hill* v. *State,* 41 *Ga.* 484, 503; *Cade* v. *Hatcher,* 72 *Ga.* 359; *Cotton States Life Insurance Co.* v. *Edwards,* 74 *Ga.* 220.

3. It was not error for the trial judge to allow the plaintiff's son, who collected the insurance for his mother, to testify on direct examination that the money he paid to the defendant Hawthorne came from the proceeds of this insurance, and that the only money to the credit of the bank account at the time he drew these checks thereon which he gave to the defendants came from such insurance. This witness was attorney in fact for his mother and had charge of these matters for her in her capacity as administratrix of her deceased husband, and such testimony of this witness in this connection was not a conclusion. He was testifying as to matters of which he properly had knowledge.

4. Testimony of the son of the plaintiff as follows: "As to what I knew about the duties and privileges of an administratrix and the rights of a temporary administratrix at that time—I had never had any experience at all, so I did not know anything at all about it, how to handle it, or what the rights were, or anything," was not objectionable on the ground that every one is presumed to know what the law is relative to an administratrix and her rights and duties, and in that such evidence was irrelevant to the issues in the case. The theory of the plaintiff's case was that the defendants by fraud and threats obtained her individual funds from this witness, and that this witness was her attorney in fact as to the affairs of her deceased husband's estate of which she was administratrix.

5. A new trial should not be granted to the defendants because

the court allowed the plaintiff's son to testify, "With reference to the check itself, I know what the entries on it mean; that is, the various stamps, what they signify and what they have reference to; and that check cleared in Philadelphia on June 13th." The witness stated absolute knowledge of the meaning of the entries on the check, and, knowing the same, testified that the check cleared in Philadelphia on June 13th. This testimony was not inadmissible because it was a conclusion not founded upon facts.

6. The court did not err in refusing to rule out the testimony of plaintiff's son as to the foregoing entries on the back of the check referred to above when he admitted on cross-examination that all he knew about the check clearing on June 13th was from an examination of the entries on the check. The check was in evidence. The sufficiency, weight, and credit to be given testimony is a matter for determination by the jury. See *Hotchkiss* v. *Newton*, 10 *Ga.* 560.

7. The court did not err in allowing the plaintiff to testify as follows: "As to whether or not, any time since the payment of my money by my son to the Virginia Carolina Chemical Company, I have ratified or agreed that it could have that money, I have not. When I found out that they had my money, I proceeded to get a lawyer," upon the theory that such testimony was given in response to a leading question, to wit: "Have you at any time since the payment of this money, your money, by your son to the Virginia Carolina Chemical Company, ever ratified or agreed that it could have that money?" The court did not err in allowing the witness to answer this question, upon the ground that it called for a conclusion.

8. The judge did not err in admitting in evidence a certified copy of the award of a year's support to the plaintiff and her two minor children, upon the ground that it was too vague, indefinite, and uncertain in so far as it related to any particular insurance policy, the award describing the insurance set apart as "his equity in one $2000 life-insurance policy, value $1200." This description, with the aid of extrinsic evidence, is sufficient to identify the insurance policy referred to. See *Blackwell* v. *Partridge*, 156 *Ga.* 128, 129 (118 S. E. 739), and cit. Furthermore, that the property described in the year's-support award constituted the entire estate left by the deceased husband appears from the evidence in

this case. See *McSwain* v. *Rickelson,* 129 *Ga.* 176 (58 S. E. 655).

9. The defendants alleged in their original answer that the entire estate of the plaintiff's husband was set aside to her and her minor children as a year's support. Although by amendment the defendants struck this portion of their original answer, it appears from the record that the plaintiff introduced the same in evidence, and the facts alleged therein were uncontroverted by the defendants' evidence, and therefore, for the purpose of this investigation, these admissions of the defendants must be taken as true. *Alabama Midland Ry. Co.* v. *Guilford,* 119 *Ga.* 523, 525 (46 S. E. 655). It is true that the defendants demurred to an amendment filed by the plaintiff in which she set up that the entire estate of her husband, including accounts, insurance, and notes payable, and all property of every kind, had been set apart to her as a year's support, attaching thereto a copy of the order of the court of ordinary which recited that "notes and accounts valued at $1000 . . and his equity in one $2000 life-insurance policy value $1200" had been set apart, upon the ground that such order was vague, indefinite, and uncertain in so far as it undertakes to set aside any notes or accounts of the decedent, that therefore no such notes and accounts were set aside as a year's support, and that the language of the order relative to the insurance policy was also vague and indefinite, and therefore the order was void as to the life insurance, and that the trial judge in passing upon this demurrer allowed the amendment in part and sustained the demurrer thereto in part, holding that the order of the court of ordinary was void and of no effect in so far as it attempted to set aside as part of the year's support any notes or accounts belonging to the decedent. While a judgment of the court of ordinary setting apart a year's support may be set aside in a proper case (*Ellis* v. *Hogan,* 147 *Ga.* 609, 95 S. E. 4), it is not subject to collateral attack where the record does not disclose any lack of jurisdictional facts. *Bush* v. *Lindsey,* 24 *Ga.* 245 (71 Am. D. 177) ; *Goss* v. *Greenaway,* 70 *Ga.* 130; *Jackson* v. *Warthen,* 110 *Ga.* 812 (36 S. E. 234) ; *Riddle* v. *Shoupe,* 147 *Ga.* 387 (94 S. E. 236). It appearing in this case that the accounts receivable and all other property of the decedent were set apart as a year's support, evidence of the defendant, to the effect that after it had been paid the debt which the plaintiff's husband was due it, outstanding accounts due the estate of the husband

were collected in an amount greater than the amount which plaintiff claims was wrongfully paid out of her individual funds, was not admissible for the purpose of showing that the plaintiff was not damaged "by reason of the fact that assets of the estate which were properly subject to the payment of the estate's debts were subsequently deposited in the same account under the control of the plaintiff, as administratrix, in a sufficient amount to reimburse her for any amounts of her individual funds alleged to have been used for the payment of defendant's debt." Furthermore, the issue in this case was whether the payment of the debt to the defendant company was made out of plaintiff's individual funds, and if so, whether in such a wrongful manner as to make the defendants liable to her in damages.

10. Under the pleadings, issues, and evidence in this case, a new trial should not be granted the defendants because the court charged the jury that "In passing upon these matters, that is, the issues involved in this case, you are authorized to consider the law of this State which provides that a temporary administrator is not authorized to pay out money of the estate in settlement of debts due by the deceased, though that fact alone would not authorize a recovery by the plaintiff in this case," and also charged that "an administrator shall be allowed twelve months from the date of qualification to ascertain the condition of the estate." While this was not an action brought to recover money improperly paid out of the assets of the estate, it was an action to recover money used in the payment of a debt of the decedent alleged to have been wrongfully made, and obtained with the private or individual funds of the plaintiff, the administratrix thereof. Such instructions were not injurious to the defendants and did not tend to mislead the jury as to the true issues involved.

11. Plaintiff proved her case as laid in the petition. That the petition set out a cause of action authorizing the plaintiff to recover upon proof of the allegations thereof has been adjudicated by this court. *Hawthorne* v. *Pope,* supra. There is no merit in the contention that the evidence for the plaintiff failed to show that at the time when the defendant Hawthorne, agent of the corporate defendant in this case, is alleged to have induced the plaintiff's son to deposit certain proceeds from insurance policies to the plaintiff's credit in the bank as administratrix, and to make the payment of

the note due that defendant out of her individual funds by a check drawn thereon, he knew that such proceeds received from the insurance policies were plaintiff's individual funds. Plaintiff's son testified, "as to what he [the defendant Hawthorne] knew about whose money this was—I told him it was mother's insurance. It was after his knowledge of it being mother's money that he directed me to have her indorse it as temporary administratrix." Defendants urged that because of certain other testimony of this witness on cross-examination it could and should be adduced that this defendant did not know it was plaintiff's private money at the time he is alleged to have urged witness to put the same in the bank to her credit as administratrix and draw a check thereon in favor of the defendant company, and it should be held that the evidence did not authorize a finding that such defendant knew thereof, because of the principle that "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him, when it is self-contradictory, vague, or equivocal. And unless there be other evidence tending to establish his right to recover, he is not entitled to a finding in his favor, if that version of his testimony the most unfavorable to him shows that the verdict should be against him." *Steele* v. *Central of Ga. Ry. Co.*, 123 *Ga.* 237 (51 S. E. 438); *Long Cigar & Grocery Co.* v. *Harvey*, 33 *Ga. App.* 236 (2) (125 S. E. 870), and cit. However, this principle is not applicable where the witness whose testimony is thus attacked was not a party. The fact that such witness was plaintiff's son and in all probability favorably inclined toward her does not alter the situation in so far as this principle of law is concerned. The credibility of witnesses, their favor, interest or bias, are questions for the jury, and not the courts. The evidence in this case fully supported a verdict in the plaintiff's favor.

12. It follows that the trial judge did not err in overruling the defendants' motion for new trial.

*Judgment affirmed. Jenkins, P. J., concurs. Stephens, J., concurs in the judgment.*