## 56638. BRACEWELL v. KING.

SUBMITTED OCTOBER 3, 1978 — DECIDED OCTOBER 23, 1978.

*Walters, Davis, Ellis & Smith, James D. Hudson,* for appellant.

*Yancey, Perkins & Barnick, Dane Perkins, Fallin & Kirbo, Billy G. Fallin, William M. McIntosh,* for appellee.

DEEN, Presiding Judge.

1. King had previously bought a rectangular plot of land measuring 100 by 200 feet from the defendant Bracewell. The boundaries are described only bounded on

the north by the south side of State Highway 76 (150 feet), east by other lands of Bracewell (200 feet), south by lands of Brogdon and west by lands of H. M. Tillis, and referring to the recorded plat showing Bracewell's original purchase. Tillis was Bracewell's uncle, who sold the lot to Esters who sold it to Sellers. The Kings testified that when their lot was laid off Bracewell was present, and all agreed to start at a ditch on Bracewell's property because his aunt, Mrs. Tillis, came out and said she wanted the little piece adjoining her land and west of the ditch, which was a small wedge-shaped bit of land fronting some 27 feet on the road and tapering to nothing at the back. If the starting point was in fact the intersection of the ditch and the road, the well polluted by gasoline (which the evidence strongly preponderated toward as being seepage from Bracewell's garage activities) was on King's property. If, as contended by Bracewell, this was untrue, and the beginning point was the intersection of the original Tillis property with the road, then the well was in fact some 17 feet over on Bracewell's property. Bracewell denied being present when the lines were drawn and denied that he had agreed to deed the small triangle to Tillis. He also denied having offered to sell it to Esters or Sellers, although both subsequent owners testified that Bracewell claimed it and tried to sell it to them. Bracewell until this action never contested the claim made by King to the well which King had dug, nor his right to plant trees just beyond it marking the line as understood by him, and never exercised any dominion over the small triangle next to the Tillis (now Lasseter) property. The evidence thus preponderates strongly to the case made by King and evidently accepted by the jury, which was that all parties agreed on the ditch as the property line with the little triangle beyond the ditch either belonging to or to be deeded to the vendor's uncle and adjoining owner. In such case the language of the deed showing King's purchase as bounded on the west by the lands of Tillis would be to that extent inaccurate. The verdict in favor of King is amply supported by the evidence.

2. Error is enumerated on the following: "Should you find from the . . . evidence presented that Sherwood King has had continuous, exclusive, uninterrupted and

peaceful possession for more than seven years of the lot a hundred and fifty by two hundred located on the east side of the culvert ditch, then you would be authorized to find in favor of the Plaintiff as to the land line portion of this case." The seven-year provision is apparently an attempt by the court to charge Code § 85-407 providing that adverse possession of lands under written evidence of title for seven years gives a prescriptive title. The evidence of title referred to here means color of title. *Harrison v. Durham,* 210 Ga. 187 (6) (78 SE2d 482) (1953). The deed, however, is not defective in any way, and does not in fact meet the meaning of color of title which is usually a flaw arising from a defect of conveyance or from want of title in the maker. *Warlick v. Rome Loan &c. Co.,* 194 Ga. 419 (22 SE2d 61) (1942). The deed is good; only the intended beginning point is at issue. The case is therefore not controlled by *Fender v. Gardner,* 153 Ga. 460 (112 SE 368) (1922) where the adverse claim was based entirely on possession. The beginning point (and therefore the location on the ground of the north-south lines) being the only issue, it appears that "whether the above deed covers the premises in dispute is not shown by the un-contradicted evidence in the case, but depends upon a question of fact which can only be determined by the jury." *Blackwell v. Partridge,* 156 Ga. 119 (1) (118 SE 739) (1923). A proper instruction would have been that if the evidence showed the ditch to have been intended as marking the boundary between the Bracewell and Tillis lands, then the jury would be authorized to find in favor of the plaintiff as to the land line portion of the case. The charge as given was error and probably confusing to the jury.

3. Error is enumerated on the instruction that "the measure of damages for wounded feelings must be determined by the enlightened conscience of impartial jurors." The charge is apparently drawn from Code § 105-2002 relating to the "additional damages" which may be awarded where the perpetration of the tort is accompanied by aggravating circumstances. "To authorize the imposition of punitive or exemplary damages there must be 'evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire

want of care which would raise the presumption of a conscious indifference to consequences." *Southern R. Co. v. O'Bryan,* 119 Ga. 147 (1) (45 SE 1000) (1903). Here nothing suggests that the defendant had any more intimation than the plaintiff that his activities in burning gasoline in a waste pit on his property might endanger the plaintiff's water supply. No *wilful* misconduct in the perpetration of the tort on which this lawsuit is grounded is made to appear. There appears to be no contention that the waste pit from which the gasoline presumably filtered did not exist in its present location prior to the digging of the well. The plaintiff did not in his pleadings seek exemplary damages nor allege that the tort was wilful or intentional. Although it was stated in *Mundy v. Cincinnati Ins. Co.,* 141 Ga. App. 106 (232 SE2d 621) (1977) that where general damages are prayed for and where *the facts alleged* would authorize the recovery of punitive damages they need not be claimed eo nomine, and while this action alleges negligence, trespass and nuisance, the facts do not suggest that these actions were intentionally oppressive or malicious. The garage, along with the open pit, was apparently in use between 1960 and 1975. Plaintiff purchased in 1964 and immediately began work on his house and well. The defendant's well itself became contaminated after this time. Plaintiff's well showed its first contamination around 1973 and had to be abandoned in 1975. Damages for wounded feelings must be *additional to* the general damages sought by the plaintiff which included loss of market value of the home and, if proved, such other damages as might be caused by the necessity of moving to another location, along with compensation for the suffering and inconvenience caused by the destruction of the water supply. The charge as given was error.

4. The remaining enumerations of error have either been abandoned or need not be decided as the case is to be tried again.

*Judgment reversed. Smith and Banke, JJ., concur.*