

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

**GERALD C. MANN**
**ATTORNEY GENERAL**

Hon. Fred Erisman
Criminal District Attorney
Gregg County
Longview, Texas

Dear Sir:

Opinion No. O-5268
Re: 1. Whether or not the Tax
Assessor and Collector of
Gregg County may assess for
taxes the pipe lines, pumping
equipment and all buildings
connected with the War Emer-
gency Pipe Lines, Inc.,
located in this County?

2. Is this company liable for
the payment of taxes on intan-
gible assets?

We have received and carefully considered your
request for the opinion of this department upon the above
questions. However, this opinion is confined to a discus-
sion of your first question, since the subject matter of
your second question lies wholly within the jurisdiction
of the State Tax Board.

With your letter you kindly enclosed a copy of
the Act of January 22, 1932, Ch. 8, Sec. 10, 47 Stat. 9,
as amended by Act of June 10, 1941, Ch. 190, 55 Stat. 248,
dealing with the exemption of property of the Reconstruc-
tion Finance Corporation from taxation. We quote pertinent
provisions from the Act as follows:

"The corporation * * * shall be exempt from all
taxation now or hereafter imposed by the United States,
* * * or by any state, county, municipality, or local
taxing authority; except that any real property of the
corporation shall be subject to State, Territorial,
County, municipal, or local taxation to the same extent
according to its value as other real property is taxed.

Hon. Fred Erisman, page 2

"The exemptions provided for in the preceding sentence with respect to taxation * * * shall be construed to be applicable not only with respect to the Reconstruction Finance Corporation but also with respect to the Defense Plant Corporation, the Defense Supplies Corporation * * * and any other corporation heretofore or hereafter organized or created by the Reconstruction Finance Corporation under Section 5d of this Act, as amended, to aid the Government of the United States in its National defense program * * *

"Such exemptions shall also be construed to be applicable to * * * personal property owned, by the Reconstruction Finance Corporation or by any corporation referred to in * * * the preceding sentence, but such exemptions shall not be construed to be applicable in any State to any building which are considered by the laws of such State to be personal property for taxation purposes."

We also are in receipt of a right of way easement conveyed by Gaines T. Shoults to Defense Plant Corporation, which you advise is the type of instrument being used generally. In this connection, you also advise that the deed conveying the property in fee, upon which said property, storage tanks and pumping equipment are located, is also made to the Defense Plant Corporation. The pertinent portions of the right of way easement are as follows:

"KNOW ALL MEN BY THESE PRESENTS: That Gaines T. Shoults, a single man of the Postoffice of Headquarters Division, Presidio, California, in the State of California for and in consideration of Eighty-three and 50/100 ($83.50) Dollars Cash in hand paid, receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto Defense Plant Corporation, a corporation controlled by the United States of America and created pursuant to Section 5d of the Reconstruction Finance Corporation Act, as amended, and its successors and assigns the right to lay, operate, renew, alter, inspect and maintain a pipe line for the transportation of oil, gas, petroleum products or any other material or substance which can be transported through a pipe line, or any one or more of said substances, Grantee selecting the route upon, over, under and through the following described land situate in the County of Gregg, State of Texas:

(Here follows description)

Hon. Fred Erisman, page 3

"and also the right, upon the payment of the like consideration, to lay, operate, renew, alter, inspect and maintain a second pipe line for like transportation, adjacent to and parallel with the first pipe line; and Grantee at any and all reasonable times shall have the right of ingress and egress to and from such pipe lines, and may remove the same in whole or in part at will.

"TO HAVE AND TO HOLD the said easements unto said Defense Plant Corporation, its successors and assigns, so long as such structures or any thereof are maintained.

"By acceptance hereof, Grantee agrees to bury such pipe line so that they will not interfere with the cultivation or drainage of the land and also to pay any and all damages to stock, crops, fences and land which may be suffered from the construction, operations, renewal, inspection or maintenance of such pipe lines."

We have been unable to find any federal statute which defines "real property." Therefore, for the purposes of this opinion, we shall give the term its usual meaning.

In the State of Texas real property for the purpose of taxation is defined by Article 7146, Vernon's Annotated Civil Statutes of Texas, which reads as follows:

"Real property for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same."

An easement is an interest in land. It is so stated in 28 C. J. S. 620. The Texas decisions are in accord with this doctrine. West v. Giesen, 242 S. W. 312, writ of error refused. "An easement in land is an interest in land and therefore is land." Burgess v. City and County of Dallas Levee Improvement District, 155 S. W. (2d) 402, writ of error refused.

Hon. Fred Erisman, page 4


In view of the foregoing quoted authorities, in our opinion the easement is taxable as real property.

The easement referred to being real property, we now come to a consideration of whether the pipe line has become a part of the realty, i. e., the easement. In this connedtion, it should be noted that there is not involved in the instant situation a landlord-tenant relationship, nor is there involved a mortgagor-mortgagee relationship.

It is to be noted that the instrument conveying the right of way for the pipe line contains this stipulation, "Grantee may remove the same in whole or in part at will." Said stipulation has reference to the pipe lines which it is contemplated will be put in the ground by the grantee.

It is obvious that the pipe line, prior to the time the pipe was placed in the ground, was personal property. Upon being placed in the ground, if it became a "fixture" then it became real property and is taxable as such. If it did not become a fixture, then of course it would retain its status as personal property.

In the case of Hutchins v. Masterson, decided by our Supreme Court at the Galveston term in 1877, and reported in 46 Texas Reports 551, Mr. Associate Justice Moore had this to say:

"The word 'fixture', if a legal term, which Lord Campbell seems to doubt, it is universally conceded, is, as a substantive term, of modern origin. And, as has been frequently said, there is no other legal term in so general use to which there has been more different and contradictory significations attached. (Ewell on Fixtures, 82.) To a great degree, this has been occasioned by the different standpoints from which the questions touching its application have been viewed: the relation of the parties regarding it, the degree of fixedness of the property involved, and the purpose or intention with which the article in question was annexed to or placed upon the land. The necessary consequence of this absence of certainty and uniformity in the use of the word, has occasioned confusion and

Hon. Fred Erisman, page 5

conflict in the decisions on the subject, in respect
to the rights of parties interested in its determina-
tion in the great number of cases in which, in recent
times, it has been under discussion; and especially
in reference to the proper tests for determining
whether the particular article in question should be
regarded as a fixture or not.

"It is said, the weight of the modern authorities
establish the doctrine that the true criterion for
determining whether a chattel has become an immovable
fixture, consists in the united application of the
following tests:

"1st.  Has there been a real or constructive
annexation of the article in question to the realty?

"2d.  Was there a fitness or adaptation of such
article to the uses or purposes of the realty with
which it is connected?

"3d.  Whether or not it was the intention of the
party making the annexation that the chattel should
become a permanent accession to the freehold?— this
intention being inferable from the nature of the
article, the relation and situation of the parties
interested, the policy of the law in respect thereto,
the mode of annexation, and purpose or use for which
the annexation is made.

"And of these three tests, pre-eminence is to be
given to the question of intention to make the article
a permanent accession to the freehold, while the others
are chiefly of value as evidence as to this intention.
(Ewell on Fixtures, 21, 22.)

"It is also to be noted, that owing to the greater
relative importance and value now attached to chattels
than formerly, and, in the interest of manufacture and
commerce, a much more liberal rule has been adopted,
in determining whether or not chattels which have been
placed upon land by lessees and tenants are permanently
annexed to it, than once prevailed.  It is well settled

Hon. Fred Erisman, page 6

however, that there has been no such modification in the ancient rule, in the absence of evidence of intention to vary their rights, as between grantor and grantee. (2 Kent, 345; Kinsill v. Billings, 35 Iowa, 154; De Graffenreid v. Stubbs, 4 Humph., 451.)"

The case of Maro Co., Inc., v. State, 168 S. W. (2d) 510, decided by our Court of Civil Appeals at Amarillo in January, 1943, rehearing denied February 15, 1943, and in which case writ of error was refused, refers with approval to the enunciation of principles as set forth in the above quoted case of Hutchins v. Masterson. The court said in part:

"The controversy resolves itself into a question of whether or not the casing, rods, tubing, pumps, tanks, etc. were personal property or a part of the realty. . . .

". . .

"Article 7146 of the Revised Civil Statutes provides: 'Real property for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same.'

"In this connection, it seems that the 'buildings, structures and improvements, or other fixtures of whatsoever kind thereon' applies to the improvements placed on the surface of realty but that same does not apply to 'all mines, minerals, quarries and fossils in and under the same.'

"It does not seem that the rule is changed by the provisions of article 7319, R. C. S., which provides as follows: 'For the purpose of taxation, real property shall include all lands within this State, and all buildings and fixtures thereon and appertaining thereto, except such as are expressly exempted by law.'

Hon. Fred Erisman, page 7


"Appellee tries to make a distinction between
the rule making accessories or appliances such as
these a part of the realty for taxable purposes
and any other rules governing the question of whether
such appliances or accessories are personal property
or a part of the realty.  After making an exhaustive
research we have failed to find any distinction or
any difference in the rules applicable in such cases.

"A good test and a true criterion which is often
followed to determine whether property is personal or
real is laid down in the case of Hutchins. v. Masterson
& Street in 46 Tex. 551, 554, 26 Am. Rep. 286, as fol-
lows:

"'1st. Has there been a real or constructive annexa-
tion of the article in question to the realty?

"'2d. Was there a fitness or adaptation of such
article to the uses or purposes of the realty with
which it is connected?

"'3d. Whether or not it was the intention of the
party making the annexation that the chattel should
become a permanent accession to the freehold?— this
intention being inferable from the nature of the article,
the relation and situation of the parties interested,
the policy of the law in respect thereto, the mode of
annexation, and purpose or use for which the annexation
is made.

"'And of these three tests, pre-eminence is to be
given to the question of intention to make the article
a permanent accession to the freehold, while the others
are chiefly of value as evidence as to this intention.'

"While appellant contends that the original lease-
hold in question here from W. T. Waggoner to Barkley &
Meadows provided that the casing, rods, tubing, tanks,
etc., may be removed by the lessee from the leasehold,
we find only a small part of said lease in the record
in this case and such a provision, if made, was not
contained in that part of the leasehold in the record.

Hon. Fred Erisman, page 8

However, it stands to reason that the intention of the parties to the original lease contract would be to place the casing, rods, tubing and even the pumps and tanks on such a leasehold for temporary use only with the full intention of removing them onto other leases if desired, and certainly in case production became unprofitable as was the case with the leasehold in question.

"It is our opinion that the casing, rods, tubing and other such property in question in this case was not a part of the realty and, therefore, no constitutional or statutory tax lien existed against said property, hence, no security existed for destruction by anyone." (Emphasis ours)

The applicable rules are also stated in 36 C. J. S. 892, as follows:

". . . Ordinarily the courts hold that for an article to become a fixture there must unite the following requisites: (1) annexation to the realty or something appurtenant thereto; (2) adaptability or application of the chattel affixed to the use or purpose to which the realty is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold."

The requisite labeled "(1)" above is perhaps easily satisfied. According to the terms of the instrument conveying the right of way, the grantee agrees to bury the pipe line in the ground below plow depth.

Requisite "(2)" is apparently satisfied for the reason that the easement was acquired only for the purpose of maintaining a pipe line, or possibly two pipe lines, across the land in question.

In recent years more and more weight has been given to requisite "(3)", until it is now regarded as the major test in determining whether or not personal property has become a fixture. As stated in the foregoing Texas decisions, "And of these three tests, pre-eminence is to be given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence as to this intention."

Hon. Fred Erisman, page 9

The only evidence of the intention of the parties with respect to whether or not they intend the pipe line in question to become a fixture is the above quoted excerpt from the conveying instrument, where it is recited that the grantee "may remove the same (meaning the pipe line) in whole or in part at will."

Absent other and controlling evidence establishing an intention of the parties to make the pipe line a fixture, we would be constrained to say that the pipe line is not a fixture but is personal property and therefore not subject to being taxed as real property.

In our opinion the pumping equipment is a part of the realty. It is located on property owned in fee by Defense Plant Corporation. We have been placed in possession of no facts which indicate the pumping equipment was not intended by the parties to become a part of the realty. A number of decisions support the proposition that pumping equipment becomes a part of the realty when annexed thereto. (See Blain v. Corbin, 51 Ga. App. 472, 180 S. E. 854; First State & Savings Bank v. Oliver, 101 Or. 42, 198 P. 920; Bell v. Bank of Perris, 52 Cal. App. (2d) 66, 125 P. (2d) 829; Rinbrand Well Drilling Co., Inc., v. L. & H. Theatres, Inc., 20 A. (2d) 358.)

We also are of the opinion that the buildings inquired about are taxable as real property. Although in the great majority of cases the burden of proof is upon one asserting that the circumstances of annexation of personalty to realty are such as to make the article a part of the realty, such is not the case with buildings. Buildings are presumed to be a part of the realty. 36 C. J. S. 1006-1008.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _George P. Blackburn_
George P. Blackburn
Assistant

APPROVED JUL 26, 1945

FIRST ASSISTANT
ATTORNEY GENERAL

GPB:AMM

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN